BAKER v. GRACE. (No. 458.)

(Court of Civil Appeals of Texas. Beaumont.
May 27, 1919. Rehearing Denied
June 4, 1919.)

1. MASTER AND SERVANT ⟁111(1)—INJURIES
TO SERVANT—NEGLIGENCE—APPLICATION OF
FEDERAL APPLIANCE ACT—"TRAIN."

An engine and two wrecking cars on one
of which plaintiff switchman was riding when
injured *held* not a "train" within Act Cong.
March 2, 1893, § 1 (Comp. St. § 8605), as
amended by Act Cong. March 2, 1903, § 1 (U.
S. Comp. St. § 8613), so that failure of the
railroad to have the air brakes on the cars
coupled up to enable the engineer to control
the cars from the engine was negligence on
the railroad's part as a matter of law.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Train.]

2. COURTS ⟁97(5)—CONSTRUCTION OF FED-
ERAL ACT BY FEDERAL COURT.

Any construction placed on an act of Con-
gress by the Supreme Court of the United
States is absolutely binding and controlling on
the courts of any state.

3. APPEAL AND ERROR ⟁994(2), 1003 — RE-
VIEW — VERDICT ON CONTESTED ISSUES OF
FACT—CREDIBILITY OF WITNESSES.

The jury is the judge of the weight of the
evidence and the credibility of witnesses, where
contested issues of fact are involved.

4. APPEAL AND ERROR ⟁1005(4)—REVIEW—
VERDICT.

Appellate courts, having nothing to do with
questions of the preponderance of the evi-
dence, are authorized to set aside the verdict
of a jury approved by the trial court only
where the evidence so overwhelmingly pre-
ponderates against it as to show the jury was
actuated by passion, prejudice, or other improp-
er motive, and that the verdict is clearly wrong.

5. MASTER AND SERVANT ⟁278(18) — INJU-
RIES TO RAILROAD SERVANT—NEGLIGENCE
OF ENGINEER—SUFFICIENCY OF EVIDENCE.

In a switchman's action for injuries when
he fell from a wrecking car, evidence as to the
engineer's negligence in speeding up the engine
and train with a jerk that threw plaintiff off
*held* sufficient to sustain verdict for plaintiff.

6. MASTER AND SERVANT ⟁264(1)—INJURIES
TO RAILROAD SERVANT—PLEADING CONCUR-
RENT NEGLIGENCE—PLEADING AND PROOF.

A switchman thrown from the roof of a
wrecking car, who alleged conjunctively that
negligence of the engineer in speeding up with
a jerk, and negligence of the railroad in fail-
ing to couple the air brakes with the engine,
caused his injuries, could recover on proof of
the first allegation of negligence alone; it
being shown to be the efficient cause of the
injury.

7. MASTER AND SERVANT ⟁240(4)—INJURIES
TO RAILROAD SERVANT—CONTRIBUTORY NEG-
LIGENCE.

A switchman riding on the top of toolhouse
on a car in a wrecking train, *held* not guilty
of negligence contributing to his injuries when
the engineer's act in increasing speed with a
jerk threw him off.

8. DAMAGES ⟁134(1)—PERSONAL INJURIES—
EXCESSIVE VERDICT.

A verdict for $17,000 in favor of an illiter-
ate switchman of 45 years of age against his
railroad for injuries in employment at which
he was earning $120 to $125 a month, which in-
juries totally incapacitated him from physical
labor requiring him to stand on his feet, while
he knew no other trade or work which would
be remunerative, *held* not so excessive as to
have been manifestly the result of passion,
prejudice, or other wrong influence.

9. APPEAL AND ERROR ⟁1045(1)—HARMLESS
ERROR—PRESENCE OF DISQUALIFIED JUROR.

Judgment for plaintiff in personal injury
action *held* not to be reversed on account of
the presence on the jury of one who was nei-
ther a freeholder in the state nor a household-
er in the county; it being apparent the juror
did not willfully qualify to perpetrate injury
or fraud on the court or any litigant, but was
honestly mistaken in the belief he was a house-
holder in the county.

Appeal from District Court, Harris Coun-
ty; Wm. Masterson, Judge.

Suit by Martin B. Grace against Jas. A.
Baker, receiver of the International & Great
Northern Railway Company, and the Galves-
ton, Houston & Henderson Railway Com-
pany. From a judgment for plaintiff
against defendant receiver, the latter ap-
peals. Affirmed.

S. B. Dabney, of Palestine, and Jno. M.
King, of Houston, for appellant.

John W. Parker, of Houston, for appellee.

HIGHTOWER, C. J. This was a suit by
the appellee, Martin B. Grace, against ap-
pellant, James A. Baker, in his capacity as
receiver of the International & Great North-
ern Railway Company, and also against the
Galveston, Houston & Henderson Railway
Company, by which appellee sought to re-
cover damages for personal injuries alleged
to have been sustained by him in consequence
of certain negligence on the part of said de-
fendants. Afterwards, and before trial, ap-
pellee dismissed his suit as against the Gal-
veston, Houston & Henderson Railway Com-
pany, and the case proceeded to trial against
appellant as the sole defendant.

The case was tried with a jury, and was
submitted upon special issues, resulting in
a verdict and judgment in favor of appellee
against appellant for $17,000.

In view of contentions made by appellant
that the judgment cannot be sustained, con-
sidering appellee's pleadings, the jury's find-
ings, and the evidence, we have deemed it
best to not merely attempt to state substan-
tially appellee's cause of action, as made by
his petition, but to quote the material por-

tions of his petition. As grounds of negligence plaintiff alleged:

"That, on, to wit, September 18, 1916, plaintiff was employed at Houston, Harris county, Tex., by defendants as a switchman in their service as common carrier by railroad, and on said date was working in the performance of his duty in connection with a train of defendants, consisting of a locomotive and two cars, one known as a 'tool car,' and the other a box car, the two cars being used by defendants for transporting apparatus and material for replacing derailed cars on their tracks and repairing damage done to their tracks and roadbed; that the said train was under orders to go from defendants' Preston street yard, in the city of Houston, to the Merchants' & Planters' Oil Mill, to replace a derailed car on what is known as the 'Merchants' & Planters' track,' at or near said mill, some two or three miles distant, which said track connected with defendants' tracks and formed a part of their said railway, and that the said train, in going from the said yard to the said mill, had to pass over tracks in the said yard, a portion of the main line, and thence over the said 'Merchants' & Planters' track'; that, while the said train was provided with power or train brakes, the said train brakes were not connected up so as to be used and operated by the engineer on the locomotive drawing or propelling said train; that as the train was approaching Hill street, a public street in and of the city of Houston, over which the said defendants' railroad crossed, it became necessary for plaintiff, who was in his proper place on the top of the house part of said tool car, and the other employés connected with the operation of the train, to give the engineer and fireman in charge of the locomotive propelling said train signal to stop or slow down the said train, in view of the approach of an automobile on Hill street to the said crossing with the evident purpose of passing over same, which signals it was their duty to observe and obey, and the said engineer and fireman stopped or slowed down the said train, and thereupon, without signals from plaintiff, and without notice or warning to plaintiff, wrongfully, carelessly, and negligently suddenly set the said train in motion, or suddenly increased the speed thereof, thereby imparting to the car on which plaintiff was an unusual and unnecessary jerk, jar, or jolt, and taking him unawares, and thereby and in consequence thereof throwing him from the said car or causing him to fall therefrom a great distance to the ground, injuring him. * * *

"And in this connection plaintiff further alleges that defendants, their officers, agents, and employés, including the engineer and the foreman of the switching crew in charge of said train, violated the United States Safety Appliance Act of March 2, 1903, and amendments thereof, in that they operated the said train without the engineer of the locomotive drawing or propelling the same using and operating the said train brakes; that, had the engineer used the said train brakes in operating the said train, there could and would have been no unusual or unnecessary jerk, jar, or jolt imparted to the said car on which the plaintiff was, and that the violation of said act and its amendments was a proximate cause of the injury of plaintiff, as aforesaid."

Appellant, for answer to appellee's petition, filed a general denial, and specially pleaded that the operation was a switching operation, the engine shoving the cars; that the accident took place upon a switch in appellant's yard, and that the plaintiff, Grace, unnecessarily went upon the tool car, which had a small roof, and stood thereon when it was not necessary for him to go or stand thereon; that there was no unusual jar or jolt or negligence, as alleged by plaintiff, but that the plaintiff, through his own negligence, stepped off of the roof of said tool car, and further alleged, substantially, that appellee was guilty of contributory negligence in certain particulars, as will be hereinafter noted.

The trial court, in its charge to the jury, after a preliminary statement of the character of the action and the substance of the pleadings of the parties, and after properly defining "negligence," "contributory negligence," "proximate cause," "assumed risk," etc., then propounded to the jury the following questions:

"Question No. 1. Was the plaintiff caused to fall from the car by an unusual and unnecessary jolt imparted thereto by the engineer in the handling of the engine?"

To this question the jury answered "Yes."

"If you answer 'Yes,' then was the jolt due to negligence on the part of the engineer in the handling of the engine?"

To this question the jury answered "Yes."

"Question No. 2. Was the plaintiff taken unawares and caused to fall from the car by the engineer, after slowing down or stopping the speed, suddenly increasing the speed without signal from plaintiff so to do, and without warning to him?"

To this question the jury answered "Yes."

"If you answer 'Yes,' then was the act of the engineer, under the circumstances, negligence?"

The jury answered "Yes."

"Question No. 3. If the engineer had used the train brakes in operating the cars, could he have done so with less jolts and jars to the cars?"

To this question the jury answered "Yes."

"If you answer 'Yes,' then, if the engineer had used the train brakes, would the plaintiff probably not have fallen from the car?"

To this question the jury answered "Yes."

"If you have not answered either of the foregoing issues numbered 1, 2, and 3 in the affirmative, you will not further consider of your verdict, but at once report to the court. If, however, you answer either, any, or all of said issues in the affirmative, then you will answer the following questions:

"Question No. 4. Did the plaintiff inadvertently or accidentally step off the car?"

To this question the jury answered "No."

"If you answer 'Yes,' then you will not further consider of your verdict, but at once report your finding to the court.

"Question No. 5. Was the plaintiff, in standing upon the roof of the car, under the circumstances, guilty of contributory negligence?"

To this question the jury answered "No."

"Question No. 6. Did the plaintiff assume the risk of injury from being thrown or caused to fall from the roof of the car, under the circumstances? In connection with this issue, you are instructed that the plaintiff in going upon the roof of the car assumed the risks incident to that position when the car would be handled with ordinary care. If you believe there were dangers attending the position when the car would be handled with ordinary care, then the plaintiff assumed such dangers, and if you should find that his fall was due to such dangers, you will answer the question in the affirmative. However, even though you may believe there were such dangers, yet if you believe his fall was caused or contributed to by negligence of the engineer, as submitted to you in the first and second issues above, you will answer the issue 'No.' If you answer the issue in the affirmative, then you will not further consider of your verdict, but at once report your finding to the court."

To this question the jury answered "No:"

"Question No. 7: If you have not answered the issues and questions in connection therewith submitted to you above in such manner as under the instruction of the court requires you to at once report to the court, then you will assess the plaintiff's damages according to the following rule, that is to say: If you have answered that he was not guilty of contributory negligence, you will assess his damages at such a sum of money as, if paid in hand at this time, will be a fair and just compensation for the injuries alleged by him in his petition, and which you find from the evidence he sustained, if any; and in assessing such damages, if any, you will take into account the wages lost by him on account of such injuries from the time thereof up to this time, if any, the mental and physical pain suffered by him up to this time and that will be suffered by him in the future on account thereof, if any, and any impairment of his ability to labor and earn money in the future on account thereof, if any. However, if you find that plaintiff was guilty of contributory negligence, then the law requires that the damages which you assess in favor of the plaintiff shall be diminished in proportion to the amount of negligence attributable to him, by which is meant that, if the negligence causing the injury to plaintiff was partly attributable to plaintiff and partly to the defendant, plaintiff cannot recover full damages, but only in proportional amount, bearing the same proportion to the full amount as the negligence attributable to defendant bears to the entire negligence attributable to defendant and plaintiff."

Appellant's assignments of error from 1 to 6, inclusive, are as follows:

"(1) The court erred in refusing to give charge No. 1 requested by defendant, directing the jury to find for him.

"(2) The court erred in refusing and failing to sustain defendant's exception and objection to question No. 3 in the charge, which objection was as follows: 'Because the United States Safety Appliance Act of March 2, 1903, is not applicable, and because the whole movement was alleged to be intrastate, and there was no evidence whatever that the movement was interstate.'

"(3) The court erred in refusing and failing to sustain defendant's exception and objection to question 3, in the charge, which objection was as follows: 'Because, even if the above statute or any other statute applying to train brakes were invoked as the law, it would not be applicable under the conditions under which the accident occurred, in that this is a yard operation and switching operation, and switching inside the yard and switch limits of the city of Houston, the movement involving at the time of the accident two cars only, and in that under these circumstances there was no requirement that the cars should be coupled up with air.'

"(4) The court erred in refusing and failing to sustain defendant's exception and objection to question 3 in the charge, which objection was as follows: 'Because the testimony in the case shows without contradiction that there was no obligation or duty to couple up with air the two front cars to the engine, under the circumstances of the operation.'

"(5) The court erred in refusing to give special charge No. 7 requested by defendant, and in submitting it to the jury in question 3 of the general charge to determine whether or not a failure to use train brakes in operating the cars was negligence, because there was no evidence whatsoever that the engine operating the two cars and the two cars were being operated as a train, or were being operated within the limits of the federal law invoked by plaintiff at the end of section 4 of his petition, or of any other law requiring the cars to be coupled up and the air hose to be used, but the evidence conclusively showing that the engine was pushing only two cars, at a slow rate of speed, moving on a switch inside of the yard and switch limits of the defendant in the city of Houston, the two cars being wrecking cars then moving to rerail a derailed car, which derailed car was also on the switch, whereby, on the undisputed facts, there was no obligation to couple up the air and use the air on the brakes of these cars, and whereby it appearing that there was no negligence whatever in the failure to so use the air, and whereby a federal question is presented, there being no obligation or duty under the statute invoked or any act of Congress to couple up the two forward cars with air, at the place of the accident, or to there operate the train brakes thereon, this not being a 'train' within the terms of the statute, and also at the time and place there being no obligation to couple up the air or to operate the train brakes on the two cars.

"(6) The verdict of the jury and the judgment of the court are in error, because the court erred in submitting it to the jury in question 3 to determine whether or not, if train brakes had been used in operating the two cars forward of the engine, there would have been less jolts and jars to the cars, which the jury answered 'Yes,' and whether or not, if the engineer used the train brakes, the plaintiff would not have fallen from the car, to which the jury answered that he would not have fallen if the train brakes had been used, all as set forth in question 3 and the answers of the jury thereto, because, when the switch on which the accident happened was reached, the two cars being operated were switched forward of the engine by the plaintiff or by the plaintiff and others, whence the operation went on up to the place of the accident, and because the act and stat-

ute of Congress of the United States, being the Safety Appliance Act of March 2, 1903, and amendments thereto, relied on by the plaintiff and pleaded by him as showing a duty to couple up the air and operate the train brakes on the two cars, were completely shown not to be applicable to the situation, the operating being on a switch shown without contradiction by the testimony of plaintiff and others to be within the switch limits at Houston, and because under these circumstances the switch engine operating these two cars was not operating a train, and there was no requirement that the cars should be coupled up with the air and the train brakes operated from the engine, the federal statute invoked having no application to this case, and there being no negligence in the failure to couple up the cars with air so as to operate the train brakes whereby a federal question is raised."

The proposition following these grouped assignments is as follows:

"The operation at the time of the accident was of two cars upon an industry switch or track inside of the switch limits, and in a movement to rerail a car on the switch, whereby there was no obligation to have the engine coupled up with the air train brakes on the two cars, this not being a train operation, but a switch operation, and whereby the federal act of March 2, 1903, as amended, had no application. It therefore results that the court erred in ruling that the failure to have the air coupled up between the engine and the two cars was negligence in law."

It is true, as assumed by appellant in the above proposition, that the trial court was of the opinion, and in submitting question 3 to the jury assumed, that the federal act of March, 1903, with its amendments, applied in this case, and that the failure on the part of appellant to have the air brakes on said cars coupled up between the engine and said cars would be negligence on the part of appellant as a matter of law, as claimed in appellee's petition. Of course, if said act was applicable to the engine and two cars, or the movement or operation thereof out of which the accident or injury to appellee in this instance arose, then it would follow that the failure on the part of appellant to comply with the act by having the two cars in question so connected up with the engine by air brakes, as the act requires, was negligence as a matter of law, and if it were found that such negligence became a proximate cause of appellee's injuries, appellant would be liable. Therefore, as to these assignments, the controlling question for determination and decision is whether or not the federal act above mentioned was applicable.

[1, 2] The act of Congress, March 2, 1893, provides that—

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving wheel brake and appliances for operating the train brake system, or to run any train in such traffic after said date that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose." U. S. Comp. Stat. § 8605; Act March 2, 1893, c. 196, § 1, 27 Stat. 531.

The only modifications of this statute have been made, first, by extending its scope so as to include a movement in intrastate traffic on an interstate railway, and also by providing a minimum number of cars which must be equipped, and leaving the determination of a higher minimum to the Interstate Commerce Commission. Such modification or amendment to the act was made in 1903. See Act Cong. March 2, 1903, c. 976, § 1, 32 Stats. 943, and section 8613, U. S. Comp. Stats., wherein the act of March 2, 1893, was extended to all railroads engaged in interstate commerce although the immediate operation be not interstate; Act March 2, 1903, c. 976, § 2, 32 Stats. 943 (section 8614, U. S. Comp. Stats.) providing that 50 per cent. of the cars in a train shall have their brakes operated by the engineer, with provision that the Interstate Commerce Commission may increase the percentage.

Now the question is: Did the engine and two cars which were being operated by appellant, and in the operation of which appellee was engaged at the time of his injury, considering the character or nature of such operation and the place where they were being operated, constitute a "train" in contemplation of the federal act above mentioned? If this question should be answered in the affirmative, then it must be conceded that the failure on appellant's part to have these cars, or rather the air brakes on them, so coupled up with the engine as to enable the engineer on the engine to readily control the speed and movement of such cars by the use of application of air from the engine, was negligence on appellant's part as a matter of law, and a proper pleading, followed by sufficient evidence showing that such negligence was a proximate cause of appellee's injury, would entitle appellee to a recovery upon that ground alone.

After a very careful consideration of the question, however, we have reached the conclusion that the engine and two cars on the occasion in question did not constitute a train in contemplation of the federal act above referred to and in this instance invoked by appellee. We shall not go at great length into the evidence in describing the character, etc., of the operation, in which this engine and two cars were engaged at the time of the injury, but will say enough to indicate with reasonable clearness why we have so concluded.

The record shows substantially that ap-

pellant has two yards in the city of Houston, one on the north and the other on the south side of Buffalo bayou; that these yards are about half a ·mile distant from each other; that they are connected with and reached by appellant's main line of railroad; that there are many switch tracks or spurs, as they are termed in railroad parlance, branching out or leading off from appellant's main line between these two yards; that the main line also crosses another main line of another railroad company, namely, that of the Texas & New Orleans Railroad Company; that all trains are made up in appellant's yard south of Buffalo bayou; that the engine and two cars in question make trips from one of appellant's yards to the other, as may be required; that one of these cars was an ordinary box car, and the other a flat car with a tool car constructed or placed upon it, which tool car was about the height of an ordinary box car, and the roof on which was nearly flat and about 11 feet in length; that tools, etc., were kept and carried in this· tool car to be used by the crew in rerailing or replacing on tracks other cars which had become derailed or off the track anywhere in appellant's yards; that this engine and two cars were used exclusively by appellant in rerailing or replacing on the track derailed cars in and about its yards, and in fact it might be said that this engine and two cars were commonly known and called a "wrecker." These two cars were equipped with air brakes, but they were not connected up with the engine at the time of the injury to plaintiff.

It was shown that on the day of the injury to plaintiff the engine in question went to the roundhouse in the yard south of Buffalo bayou, and appellant's yard foreman gave orders to the crew to go to the north end of that yard and get the two cars in question, for the purpose of taking them to the Merchants' & Planters' Oil Mill, where another car was derailed or off the track; that the engine did go and get said cars, and pull them out on said main line between said yards, and in this movement the engine was in front of the cars, pulling them in the ordinary way, until a switch track was reached leading to the Merchants' & Planters' Oil Mill. When this point was reached, a flying ·switch was made, and the two cars placed on the switch ahead of the engine. In other words, the engine, instead of pulling the cars after this switch was made, as it had done up to this point, thereafter pushed them ahead and down the switch.

After proceeding down the switch track a ·distance equal to the ·length of some 10 or 12 cars, and just before` reaching Hill street, which is `one of the public streets of the city of Houston, and which crosses said switch track, an automobile was discovered to be approaching said Hill street crossing

by one of the switchmen, a coemployé of appellee, and in order to prevent a possible collision between these cars and said automobile, said switchman passed a signal to appellee, who was on top of the tool car, which was next to the engine, for the purpose and with the understanding that appellee was to pass such signal to the engineer operating the engine to "slow down," and in obedience to such signal the engineer did "slow down" or slacken the speed. Up to this point the evidence in the record is practically without dispute. But as to what occurred thereafter, as tending to show the cause of appellee's injury, the evidence is in hopeless conflict and irreconcilable.

Appellee testified, substantially, that when this signal was passed to him from the switchman on the box car ahead of him, he was standing on top of the tool car next to the engine, but was facing the switchman on the forward car with his back towards the engine; that, when he passed the signal to the engineer to "slow down," his signal was obeyed, but that very quickly thereafter, and very suddenly, and before he had again signaled the engineer to move forward or increase the speed of the engine, and at a moment when he was not expecting the engineer to again speed up or increase the speed of the engine, or quicken the movement forward, the engineer, unawares to him, did, in fact, suddenly and quickly and unnecessarily increase the speed of the engine, and so suddenly and unexpectedly to him started the engine and cars as to cause him to lose his balance while standing on the tool car, and to fall or be precipitated therefrom to the ground below, some 12 or 14 feet, resulting in his injuries. Appellee further testified in this connection that the jolt or jar caused to the car on which he was standing by the act of the engineer was unusual, unnecessary, and was perhaps the most violent jolt or jar that he had ever experienced while on a car during his experience as a switchman for a period of more than 12 years. In short, the appellee testified, in substance, that the jar or jolt to the car on which he was standing, caused by the unexpected and sudden increase of speed by the engineer, was an exceedingly hard, unusual, and violent one.

On the contrary, all other members of the crew, of whom there were six or seven, being the engineer, fireman, yardmaster, and several switchmen or brakemen, testified, in substance, that there was no unusual, unnecessary, or sudden starting of the engine after it had slowed down, and that there was no unusual, unnecessary, or violent or sudden jolt or jar imparted to the car on which appellee was at the time, and that he was not, in fact, caused to fall from said car by any such movement of the engine or jerk or jar or jolt to the car on which he was rid-

ing on that occasion. In other words, all the other members of the crew flatly contradicted, substantially, appellee's evidence as to what caused him to fall from the car in every material particular. Yet the jury, as we construe their verdict, accepted appellee's version as to the cause of his injuries, and by their verdict found, in effect, that appellee was caused to fall from the tool car in consequence of a sudden and unexpected starting of the engine forward, or increase in the speed thereof, which imparted to the car on which appellee was standing an unusual, unexpected, and unnecessary jolt or jar, and thereby appellee was caused to fall or be precipitated to the ground and injured, and the jury further found that the engineer was guilty of negligence in that regard, and that such negligence was a proximate cause of appellee's injuries. We will now recur to appellant's assignments of error from 1 to 6, inclusive. By argument under these assignments, it is contended, substantially, that the operation or movement in which the engine and cars were engaged at the time appellee was injured was nothing more than a switching operation, and, that, being only such, the federal act above mentioned and invoked by appellee has no application, and that there can be no recovery in this case upon the ground that appellant was guilty of negligence as a matter of law in not having the air on said cars coupled up with the engine. As said in the beginning on this point, we are of opinion that appellant's contention in this connection is correct, or at least we are of opinion that, if the operation or movement of this engine and two cars was not strictly and technically a switching operation, as understood in railroad parlance, nevertheless this engine and two cars did not, on the occasion in question, constitute a train in contemplation of the federal act.

This federal statute has been several times construed by the federal courts, including the Supreme Court itself, and, as we understand the ruling, any construction placed upon an act of Congress by the Supreme Court of the United States is absolutely binding and controlling upon the courts of any state. Two leading cases by the Supreme Court of the United States are those of U. S. v. Erie R. Co., 237 U. S. 402, 35 Sup. Ct. 621, 59 L. Ed. 1019, and U. S. v. C., B. & Q. R. Co., 237 U. S. 410, 35 Sup. Ct. 634, 50 L. Ed. 1023. There are numerous other authorities cited by both appellant and appellee in this connection, but, after a careful consideration of the holding of the Supreme Court of the United States in those cases just specifically mentioned, we have concluded that the reasoning of the court in those cases for holding that the trains in question there did not constitute a "train" in contemplation of the federal act would prevent a holding by that court and by this court as well that the engine and two cars in question in this case constituted a train in contemplation of the federal act.

In United States v. Erie R. Co., supra, the United States was plaintiff, and sought a recovery for penalties against the defendant, claimed to have been incurred by the railroad company for the reason that it operated over its main line between two different switchyards 3½ miles apart a train without having the required number of cars constituting the same connected up with the engine by means of air brakes, as required by the act now under consideration. It was shown in that case that defendant's main line tracks were used constantly by interstate trains, and the operation was principally between those two yards 3½ miles apart. The particular trains involved in that controversy were called or denominated "transfer trains," and usually consisted of some 25 cars, and were drawn by a regular engine in the ordinary way. In other words, it is apparent to us, from the language of the court in that case, that their reason for holding that the train there under consideration was such a train as is contemplated by the federal act was based largely upon the fact that such train was engaged in transferring goods, freight, etc., of an interstate character, regularly and almost continually, on the main line between the two switchyards of that company, and also because such train was made up of such a large number of cars and crossed so many main lines of other railroad companies, and was liable to collision and risks of danger in a number of different ways. Among other things, the court in that case said:

"It will be perceived that the air brake provision deals with running a train, while the other requirements relate to hauling or using a car. In one a train is the unit, and in the other a car. As the context shows, a train in the sense intended consists of an engine and cars which have been assembled and coupled together for a run or trip along the road. When a train is thus made up and is proceeding on its journey, it is within the operation of the air brake provision. But it is otherwise with the various movements in railroad yards whereby cars are assembled and coupled into outgoing trains and whereby incoming trains which have completed their run are broken up. These are not train movements, but mere switching operations, and so are not within the air brake provision. The other provisions calling for automatic couplers and grabirons are of broader application and embrace switching operations as well as train movements, for both involve a hauling or using of cars." 237 U. S. 407, 35 Sup. Ct. 624, 59 L. Ed. 1023. "They [the transfer trains moving from Jersey City and Weehawken to Bergen, and vice versa] were made up in yards like other trains, and then proceeded to their destinations over main line tracks used by other freight trains, both through and local. They were not moving cars about

in a yard or on tracks set apart for switching operations, but were engaged in main line transportation, and this in circumstances where they had to pass through a dark tunnel, over switches leading to other tracks, and across passenger tracks whereon trains were frequently moving. Thus it is plain that, in common with other trains using the same main line tracks, they were exposed to hazards which made it essential that appliances be at hand for readily and quickly checking or controlling their movements. The original act prescribed that these appliances should consist of air brakes controlled by the engineer on the locomotive, and the act of 1903 declared that this requirement should 'be held to apply to all trains.' We therefore conclude and hold that it embraced these transfer trains."

United States v. C., B. & Q. Ry. Co., supra, was a suit for penalties against the railroad company for running its transfer trains without train brakes between two freight-yards, on opposite sides of the Mississippi river, about two miles distant, over a main track line. These trains usually consisted of an engine and 35 or more cars. Among other things, the Supreme Court of the United States said:

"The work in which they were engaged was not shifting cars about in a yard or on isolated tracks devoted to switching operations, but moving traffic over a considerable stretch of main line track—one that was a busy thoroughfare for interstate passengers and freight traffic."

Now, according to the undisputed evidence in this case, the engine and two cars had no business upon and were never used upon appellant's main track, except when they were passing along it for the purpose of going to the relief of some wrecked or derailed car at some point in one of appellant's yards on some switch track, and it was never engaged in the hauling of any kind of commerce of passengers, but was, as we have stated, commonly understood to be and called a "wrecker," and in the very nature of things, considering the purposes for which it was intended and the limited area allowed for its activities, this train was not exposed to any great danger or liable to come in contact with any other train or trains or other object, and was, in our opinion, engaged in a movement or operation of no greater dignity or importance, on the occasion in question, than that of a switching operation, even if not technically or actually such, as understood in railroad parlance. We therefore hold that appellant is correct in its contention as made by its first six assignments, and the proposition thereunder, as hereinabove set out, and that the court was in error in assuming that the federal act above mentioned had any application in this case, and these assignments must be sustained.

213 S.W.—20

It does not follow, however, that this necessitates a reversal of the judgment.

[3-5] The seventh, eighth, and ninth assignments of error raise practically the same question, which is, in substance, that the evidence was wholly insufficient to warrant the verdict of the jury to the effect that appellant's engineer was guilty of negligence, in that he suddenly and unexpectedly increased the speed of the engine after the same had been slowed down for Hill street crossing, without notice to appellee, and taking him unawares, and that such movement of the engine imparted an unnecessary and unusual jolt or jar to the tool car, on which appellee was standing, and thereby caused him to fall and be injured, and, further, because the evidence conclusively showed that appellee fell from said tool car because of his own inadvertence and lack of proper care for his own safety.

We have already stated above, substantially, the testimony of appellee regarding the cause of his fall from the tool car, and it would be unnecessary, in this connection, to here repeat his testimony on that point. We also stated, substantially, that appellee's testimony on this point, in nearly every material particular, was disputed and controverted by the testimony of the other employés of appellant upon and about this engine and cars at the time of the accident.

If appellee's testimony as to the cause of his injuries be true, then unquestionably the jury was justified in finding that the engineer was guilty of negligence, which was a proximate cause of appellee's injuries. Therefore the real question before the jury on this point was that of veracity between appellee's and appellant's witnesses, and the jury determined that question in favor of appellee. Appellant's able counsel earnestly insist that, notwithstanding the rule, which admittedly prevails in this state, that the jury is the judge of the weight of the evidence and credibility of witnesses where contested issues of fact are involved, nevertheless in this case this court should go behind the verdict of the jury and decide this question of credibility of witnesses in favor of appellant. It is argued by counsel for appellant that it is wholly unreasonable to think that appellee's coemployés and fellow workmen would testify falsely against him in this case, in view of the serious injuries sustained by him, almost, if not totally, incapacitating him for self-support, and that, since they have done so, this court ought to hold that their version as to what caused appellee's injuries should be accepted and upheld, and that of appellee disregarded and denied. The rule is well settled in this state that appellate courts have nothing to do with the question of preponderance of the evidence, and are only authorized to set aside the verdict of a jury in a case where

it has been approved by the trial court, where the evidence so wholly and overwhelmingly preponderates against the verdict as to show that the jury was actuated by passion or prejudice or some other improper motive, and that the verdict is clearly wrong. This is so well understood that any citation of authority in its support would be superfluous. Now, this question cannot be disposed of upon the theory that appellee could possibly be mistaken as to the cause of his fall from the tool car, because there is no ground for such theory. He either willfully and deliberately testified falsely on this point, or told the truth, and therefore, as just stated, the question between him and appellant's witnesses was one of veracity alone. Looking at the testimony from the standpoint of preponderance, in the sense of numbers, we would frankly say, of course, that the finding by the jury on this point was against such preponderance, but we also understand that by the expression "preponderance of the evidence" is not necessarily meant the greater number of witnesses on this point, and also that the question of veracity of the witnesses is one for the jury, regardless of how such witnesses may be divided numerically. But in this connection appellant strenuously argues that the physical facts surrounding the accident clearly show that appellant's witnesses told the truth when they stated, substantially, that there was no sudden, unusual, or violent jolt or jar imparted to the car on which appellee was standing; one of these facts being that there was a bucket of water setting on the floor of the car beneath the toolhouse, and that even this bucket of water was not turned over, and that this, of itself, demonstrates that there was no sudden, unusual, or violent jolt or jar imparted to the car. The fact that this bucket of water was on the car, and was not turned over, is without dispute in the evidence, but we cannot say that this demonstrates the correctness of appellant's contention.

Appellant also insists that the evidence of the engineer was, substantially, that appellee, right after the accident, stated to the engineer or in his presence, that he fell from the tool car because he had forgotten that the roof thereon was so short, and that he inadvertently stepped backward, unmindful of that fact. This testimony on the part of the engineer, however, was denied by appellee, and that was a question for the jury's determination also.

On the other hand, it was shown by the undisputed evidence that appellee was an experienced switchman, having worked, as we understand the record, in this particular yard for more than 12 years prior to his injury, and it would hardly be reasonable to suppose that an experienced man of that kind did, without some cause, inadvertently step off of the car, with which the record shows he was thoroughly familiar, and in connection with which he worked and rode every day in the discharge of his duties. It might be further stated in this connection that there was testimony in the record which would authorize a finding by the jury that appellant's engineer and yard foreman, who was on the engine with him, were engaged in a heated argument or controversy at the very time of the accident about some matter personal to themselves, and from this fact the jury might have reasonably concluded that the engineer was not paying attention to his duties in handling the engine at the immediate time of the injury with that same degree of care that he would have exercised but for his attention being thus diverted. Appellant's fireman who was on the engine at the time testified, substantially, that this argument or controversy between the engineer and yard foreman was of such character and so heated that he, the fireman, in order to avoid listening to it, put his head outside of the cab, or words to that effect, and it would not be highly unreasonable to conclude that on account of this controversy between the engineer and the yard foreman the fireman himself, who was to some extent affected by it, did not accurately observe and appreciate everything that happened in the handling of the engine on that occasion.

Taking the evidence as a whole, as disclosed by the record, and being mindful of the rule that the weight and sufficiency of oral evidence, as well as the veracity of the witnesses giving it, are questions of fact for the determination of the jury, we have reached the conclusion that we would not be warranted in determining that the jury's verdict on this point in favor of appellee to the effect that the engineer was guilty of negligence in the manner in which he handled the engine is so wholly unsupported by the evidence as to authorize the conclusion that it was the result of bias, prejudice, or passion or other improper motive, and for that reason should be disregarded by us.

[6] But in this connection it is also contended by appellant that appellee's pleading precluded a judgment in his favor, even if the evidence should be deemed sufficient to warrant a finding by the jury that the manner in which the engineer handled the engine constituted negligence on his part. If we clearly understand this contention, it is, in substance, that appellee did not plead that the negligence of the engineer in so handling the engine as to cause an unusual and unnecessary jolt or jar to the car on which appellee was standing was the proximate cause of his injury, but that appellee's pleading should be construed to mean that, while the manner of the handling of the engine by the engineer might have amounted to negligence, yet that negligence would not have caused appellee to fall from the tool car had the same been coupled to

the engine by means of the air brake attachments, as required by the federal act hereinabove discussed, and that really appellee's pleading should be construed to mean that the proximate cause of his injury was the failure on the part of appellant to comply with said federal act, and that, since there was no duty resting upon appellant to so comply, and therefore could be no negligence for failure in that respect, that the judgment cannot stand.

We have quoted above the material allegations of appellee's petition on this point, and, as we construe his pleading on this point, he did not allege that the manner in which the engine was handled was not a proximate cause of his injury, but clearly alleged that it was a proximate cause, and then alleged that the failure of appellant to comply with the federal act was negligence as a matter of law, and that such negligence also became and was, not the proximate cause, nor the sole proximate cause, but a proximate cause of his injury. Therefore, appellee having alleged that the manner in which the engineer handled the engine was negligence in fact, and that such negligence was a proximate cause of his injury, he was not precluded by his pleading on that point, although he be not permitted to rely upon his allegation of negligence as a matter of law because of the failure of appellant to comply with the federal act.

In G., H. & S. A. Ry. Co. v. Watts, 182 S. W. 415, the law on this point is clearly announced as follows:

"Where a plaintiff alleges, though conjunctively, two or more grounds of negligence which he charges proximately caused, or concurred in causing, his injuries, he is entitled to recover upon proof of either, if it is shown to be the efficient sole cause, or concurring cause, of the injuries complained of."

See, also, H. & T. C. Ry. Co. v. Easton, 44 Tex. Civ. App. 95, 97 S. W. 833; T. & P. Ry. Co. v. Leakey, 39 Tex. Civ. App. 584, 87 S. W. 1168; G., H. & S. A. Ry. Co. v. Pitts, 42 S. W. 255; Shippers' Co. v. Davidson, 35 Tex. Civ. App. 558, 80 S. W. 1032; G., H. & S. A. Ry. Co. v. Vollrath, 40 Tex. Civ. App. 46, 89 S. W. 279; Railway Co. v. Finklea, 155 S. W. 613. Many other authorities might be cited in support of this rule.

The seventh, eighth, and ninth assignments of error are overruled.

The tenth assignment, as we construe it, is, in effect, disposed of by what we have said with regard to the three next preceding ones.

[7] The eleventh and twelfth assignments raise practically the same questions, the one complaining of the verdict of the jury acquitting appellee of contributory negligence, and the other complaining of the refusal of the court to peremptorily instruct the jury that appellee was guilty of contributory negligence.

Appellant contends, substantially, that appellee was guilty of contributory negligence because, "instead of working in the safest or safer way in the performance of his duties, he unnecessarily went and stood upon a moving train on the top of the small toolhouse, not over 11 feet in length, when he could have stood upon the side ladder or sat down on the roof and held on by the grabirons, or walked on the ground."

There is no dispute in the evidence that appellee was in the discharge of his duty at the time he was injured, and there is no proof or contention that he violated any rule of appellant in being upon the toolhouse in the discharge of his duties at the time, and he testified, substantially, that he took that position because he could more readily and with more certainty observe obstructions on the track or persons or vehicles that might be approaching the track at crossings, and could more easily and certainly convey signals regarding such matters to the engineer, which was clearly a part of his duty, as shown by the undisputed testimony. The fact that he was upon the toolhouse, instead of at some other place, as claimed he should have been, does not, as a matter of law, convict him of contributory negligence, but that was a question of fact, upon the whole evidence, for the determination of the jury, and they have determined it adversely to appellant, and we do not feel authorized to hold the verdict unsupported by the evidence. The assignments are therefore overruled.

[8] By the thirteenth assignment complaint is made that the verdict is excessive, and was manifestly the result of passion or prejudice or some other improper motive on the part of the jury.

At the time of his injury, plaintiff was approximately 45 years of age, of sound constitution and in vigorous health, and at the time of the trial was approximately 47 years of age. He is without education, in fact is an illiterate man, and dependent solely upon manual labor for a livelihood. Prior to his injury he had been following the vocation of a switchman for approximately 12 years, and was earning, at the time of his injury, from $120 to $125 per month, and the record shows that he was a man of industrious habits, and was seldom absent from his employment. The injuries sustained by him are admittedly serious and permanent, and the record shows, without reasonable grounds for dispute, that he has been totally and permanently disabled from any character of physical labor which requires him to stand on his feet. He was for a long period of time confined to his bed, and thereafter was for a long period confined to his room, and during much of the time he suffered excruciating pain on ac-

count of his injuries. From the day he was injured to the time of the trial his condition was such that he was. not able to earn anything, and while the testimony shows that he would probably .be able to do some character of physical labor which did not require him to be on his feet, it also shows that he has no trade or knowledge of any work of that character that would be remunerative. Under these .conditions, we think that it might be reasonably said that appellee's injuries have resulted in total destruction of his ability to labor and earn money, and that this, considered in connection with his physical and mental suffering, would warrant the jury in finding a verdict of $17,000 in his favor, or rather we cannot say that the evidence on that point was so insufficient as to suggest and warrant this court in holding that the jury was actuated by prejudice or bias or other improper motive in allowing this amount in his favor. It is true, as contended by appellant, that no mortality tables or evidence of any character were introduced showing appellee's life expectancy, and that such character of evidence would have been relevant and proper, appellee's injuries being serious and permanent; yet such proof was not indispensable, and it was proper for the jury to determine from the evidence the amount of damages to which he was entitled, notwithstanding the lack of such proof. The law has fixed no exact measure of damages in suits of this character, and the amount to which the injured party is entitled is a matter which rests in the sound discretion and fair judgment of the jury, to be arrived at from the facts and circumstances of each particular case. Brooke v. Clark, 57 Tex. 113; Railway v. Randall, 50 Tex. 261; Railway v. Connell, 27 Tex. Civ. App. 533, 66 S. W. 246; Railway v. Hynes, 21 Tex. Civ. App. 34, 50 S. W. 624; Ward v. Cathey, 210 S. W. 289. The assignment is overruled.

[9] The remaining assignments complain of the refusal of the court to grant appellant a new trial, based upon the ground that one Cole, who sat on the jury, was not a qualified juror, in that he was neither a freeholder in the state or householder in the county of Harris. We think that appellant's contention is correct that this juror was clearly shown on motion for new trial to be not qualified for the reasons stated. But, without going into the bill of exceptions on this point, as qualified and explained by the trial judge, we have reached the conclusion that the assignments should be overruled for the reason that no fact is shown from which it could be reasonably concluded that the presence of this juror resulted to the prejudice of appellant. There is not a thing shown or intimated that the juror was biased or prejudiced in any .way except the conclusion of appellant that his agreeing to a verdict against it, and especially for so large amount, shows that the juror was prejudiced. This might have been said with equal reason as to all the other jurors. We think it is reasonably apparent from the record that the juror Cole did not willfully and purposely qualify with a view to perpetrating an injury or fraud upon the court or appellant or any other litigant, and that he was probably honestly mistaken in the belief that he was a householder in Harris county by reason of the fact that he occupied a room in a certain place over which he considered he had control and management, but in which supposition, as we have stated, the juror was mistaken. We think these ' assignments should not be sustained, and they are overruled. Schuster v. La Londe, 57 Tex. 30; Newman v. Dodson, 61 ·Tex. 96; Railway Co. v. Woodward, 26 Tex. Civ. App. 389, 63 S. W. 1054.

No reversible error is shown by appellant's seventeenth assignment of error, and it will be overruled.

There being no error in the record for which, in our opinion, the judgment should be reversed, the same is affirmed; and it will be so ordered.