## GUYER v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division One, April 1, 1903.

1. **Negligence: NO EVIDENCE: STOPPING ENGINE.** If there is no evidence to support the theory that the engine was far enough away for the engineer to have stopped it in time to avoid injury to one about to cross the track, an instruction holding the railroad liable for not stopping the engine should not be given.

2. ———: ———: CROSSING TRACK. Plaintiff's husband, driving a roller to which a wagon was attached behind and followed by other rollers, approached a railroad crossing along a much-used street, which was on a level to within eighty feet of the first track on the side from which he was approaching, and then there was an upward incline of four feet. The load was heavy and his team moved very slowly up this incline and across the track. Between the first track and the next one, on which was the on-coming engine, was a level space twenty-four feet wide and an unobstructed view of the tracks, and the engine could have been seen by him 700 or 1,000 feet away. Still driving very slowly, with the power to have stopped his team in an inestimably short time, he began to cross the track on which was the engine, which was running backwards faster than permitted by ordinance, without the bell being rung and without any person, on the end of the tender to look out to avoid accidents. *Held*, that

there was nothing to suggest that the man was oblivious to the situation, and that, had the engineer seen him, any reasonable person in the engineer's position would have presumed that the other would stop and let the engine pass, and hence his widow can not recover for his death.

3. ————: CALCULATING SPEED. When a casual on-looker comes to guess, during the excitement of a shocking catastrophe, at the rate of speed an engine was moving and makes that the basis of a calculation to show what could have been accomplished in two seconds towards the stopping of the engine after the peril of one about to cross the track was discovered, by the energetic use of all appliances, the calculation is not reliable.

Appeal from Pettis Circuit Court.—*Hon. Geo. F. Longan,* Judge.

REVERSED.

*Martin L. Clardy* and *Wm. S. Shirk* for appellant.

(1) It was error to refuse to give defendant's instruction in the nature of a demurrer to plaintiff's evidence, at the close of plaintiff's case. The evidence was so clear, plaintiff's own evidence, that plaintiff's husband had been guilty of such negligence as barred her from a recovery, that the court at the close of the case, peremptorily instructed the jury as a matter of law, that he had been so negligent, yet refused to take the case from the jury. This was error. Vogg v. Railroad, 138 Mo. 172; Stepp v. Railroad, 85 Mo. 229; Henze v. Railroad, 71 Mo. 636; Payne v. Railroad, 136 Mo. 562; Kries v. Railroad, 148 Mo. 321; Corcoran v. Railroad, 105 Mo. 399; Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo. 362. And defendant did not waive its demurrer by introducing evidence of its own. Weber v. Railroad, 100 Mo. 206. If both plaintiff's husband and defendant's employees running its engine were guilty of negligence which contributed to the accident, plaintiff can not recover. Beach on Cont. Neg., sec. 56; Corcoran v. Railroad, 105 Mo.

399; Hicks v. Railroad, 124 Mo. 124; Hayden v. Railroad, 129 Mo. 362; Spillane v. Railroad, 135 Mo. 417; Baker v. Railroad, 122 Mo. 533; Craig v. Sedalia, 63 Mo. 417; Vogg v. Railroad, 138 Mo. 172.

*C. C. Kelly* and *Sangrée & Lamm* for respondent.

(1) The trial court refused all instructions asked on either side and, our case being one in which the legal effect of the facts were the same as in the Hiltz case, modeled an instruction on the sole instruction given in Hiltz v. Railroad, 101 Mo. 40. And under the facts of our case, such instruction presents the only issue in the case. Guenther v. Railroad, 95 Mo. 299. (2) Though decedent negligently placed himself in danger at the public crossing, yet if, after he did so, defendant's servants operating the engine either saw him in peril or might have seen him in peril by the exercise of ordinary care, and thereafter, with safety to themselves, could have stopped the engine and avoided killing him, then respondent can recover, for, in such case, the negligence of defendant subsequent to the contributory negligence of decedent, becomes in legal effect the proximate cause of the injury, and is actionable under the doctrine of a long and unbroken line of Missouri cases. Brown v. Railroad, 50 Mo. 467; Karle v. Railroad, 55 Mo. 484; Burham v. Railroad, 56 Mo. 342; Cagney v. Railroad, 69 Mo. 423; Price v. Railroad, 72 Mo. 419; Zimmerman v. Railroad, 71 Mo. 484; Kelly v. Railroad, 75 Mo. 149; Werner v. Railroad, 81 Mo. 374; Donnohue v. Railroad, 83 Mo. 554; Donnohue v. Railroad, 91 Mo. 365; Dunkman v. Railroad, 95 Mo. 244; Guenther v. Railroad, 95 Mo. 295; Hiltz v. Railroad, 101 Mo. 53; Kellny v. Railroad, 101 Mo. 74; Hanlon v. Railroad, 104 Mo. 389; Fiedler v. Railroad, 107 Mo. 651; Dahlstrum v. Railroad, 108 Mo. 539; Gratiot v. Railroad, 116 Mo. 467; Bunyan v. Railroad, 127 Mo. 18; Loyd v. Railroad, 128 Mo. 601; Kreis v. Railroad,

131 Mo. 545; Chamberlain v. Railroad, 133 Mo. 599; Dlauhi v. Railroad, 139 Mo. 297; Ennis v. Railroad, 155 Mo. 20; Morgan v. Railroad, 159 Mo. 275.    This is the doctrine of the St. Louis Court of Appeals: McAndrew v. Railroad, 88 Mo. App. 97; Klockenbrink v, Railroad, 81 Mo. App. 351. And of the Kansas City Court of Appeals: White v. Railroad, 34 Mo. App. 57; Duncan v. Railroad, 46 Mo. App. 198; Powell v. Railroad, 59 Mo. App. 626.   Or, if the subsequent negligent conduct of defendant's employees, after decedent placed himself in peril, may not in strictness be said to be an independent or proximate cause of his death, yet such reckless carelessness precludes defendant from being heard to say that decedent was guilty of contributory negligence.   Kellny v. Railroad, 101 Mo. 74; Morgan v. Railroad, 159 Mo. 274.   (3)   In backing over a much-used public crossing, or other place where they had no right to expect a clear track, the servants of defendant in charge of the engine and tender, should have been at their posts of duty, observant of the track, and, out of tenderness to life and limb, have been exercising a high degree of vigilance.   Frick v. Railroad, 75 Mo. 609; Williams v. Railroad, 95 Mo. 299; Hiltz v. Railroad, 101 Mo. 53.   And if the tender was so arranged or built that the engineer could not see, or the fireman could not see, ahead on the north side, they should have placed some one else so he could see.   To do as they did was to practically blindfold themselves. Morgan v. Railroad, 159 Mo. 273.   (4)   The case went to the jury on a theory too favorable to appellant, because the duty to stop, if possible, is not the only duty the employees of appellant owed decedent.   They had bell and whistle at hand to warn and should have used them.   Morgan v. Railroad, 159 Mo. 283; Fiedler v. Railroad, 107 Mo. 652.

VALLIANT, J.—Plaintiff's husband was killed by a locomotive on defendant's road at a street cross-

ing in Sedalia, and this suit is to recover damages for the injury.

The petition alleges several acts of negligence, viz.: the failure to ring a bell, running at a rate of speed prohibited by city ordinance, running at a dangerous and reckless speed without warning by bell or whistle, omitting to have an engineer on the engine, or fireman at his place of duty, or any one on the lookout at the end of the tender while backing. It was also alleged that the men in charge of the engine, after they saw or by the exercise of ordinary care would have seen, the peril in which the plaintiff's husband was, could by the exercise of ordinary care have avoided the accident if they had not been running faster than ten miles an hour in violation of the city ordinance. The answer was a general denial and a plea of contributory negligence.

There was in evidence an ordinance of the city which prohibited the running of a locomotive faster than ten miles an hour, requiring the bell of the engine to be rung on the approaching of crossings, and requiring, when the engine was backing, a man stationed on the end of the tender farthest from the engine as a lookout to avoid accidents.

There was evidence on the part of plaintiff tending to show that those requirements of that ordinance were neglected in this case. The plaintiff's evidence also showed that her husband drove on the railroad track at the street crossing when the defendant's engine was approaching in plain view and when it was obvious that the engine would strike him as it did.

Plaintiff and defendant asked a number of instructions; among those of the latter was one at the close of the plaintiff's evidence, to the effect that the plaintiff was not entitled to recover. The court refused all the instructions asked and submitted the case to the jury under an instruction of its own, designed to cover the whole case. In that instruction the jury were in-

structed that the act of the plaintiff's husband in driving on the railroad track was negligence and would preclude a recovery unless the engine was far enough away for the person in charge of it by the exercise of ordinary care to have discovered the peril of the plaintiff's husband and to have stopped the engine in time to avoid the injury; then the jury were instructed that if they found from the evidence that such was the case they should find for the plaintiff, otherwise for the defendant.

There was a verdict and judgment for the plaintiff for $5,000, and the defendant appealed.

The case should not have been submitted to the jury on that theory, for the reason that there was no evidence to sustain it.

According to the plaintiff's evidence, her husband was in the service of the city in the work of street construction. He and other workmen were returning from their work near the close of the day; he was driving a team that was drawing a heavy street roller, sitting on an improvised seat above the roller. There were other teams following in procession, he was leading. They were traveling on Mill street from north to south. The defendant's railroad tracks, running east and west, cross this street at right angles. It was a well-known and much-used railroad crossing. Going south, as these men were, the street was level until they reached a point eighty feet from the crossing, then the grade begins to ascend and so continues up to the crossing which is four feet higher than the point from which the ascending grade begins. There are several railroad tracks at that crossing but the evidence deals with only two of them, one called the mill track, which is the first one reached, the other the main track, which is the one on which the collision occurred. The space between these two tracks is seven and one half feet. Going up that grade one passes a small watch shanty about six feet square, on the left or east side of the

street; near it on the south and some ten feet east is an electric light pole. Except the shanty and pole there is nothing to obstruct the view of the railroad tracks in every direction from the point above mentioned eighty feet north. From the south side of the shanty to the north of the mill track is fourteen feet; from the same point to the north rail of the main track is twenty-six feet. After the plaintiff's husband passed the south line of the shanty and the electric light pole, there was a space of twenty-four feet between him and the north rail of the main track in which he had a clear view of the railroad tracks to the east and to the west, and could have seen this engine as it came seven hundred or a thousand feet away.

Attached to the roller, behind, was an empty wagon; following was a team drawing a street grader, and as they moved along the road the roller, wagon and the grader made considerable noise. Drawing the heavy roller with the wagon attached up the grade was such a burden on the team that it was all they could do to move it. Thus driving, the plaintiff's husband approached the railroad crossing very slowly; plaintiff's counsel think the team was not going faster than one mile an hour, a witness describes them as "just creeping."

Moving in that manner, laboring with their heavy draft, there is no doubt but they could have been stopped in a space of time too short to estimate. The theory of the plaintiff is that the man running the engine saw, or ought to have seen, her husband as he was thus approaching the tracks. Suppose the engineer saw him; what did he have a right to presume? It was daylight, the engine coming was in as plain view to the man on the roller as he was to the engineer. There was nothing to suggest to the engineer that the other was oblivious to the situation, or that he had failed to use his eyes and see what every one else there saw. Any reasonable man in the engineer's position would pre-

sume that the man on the roller would stop before crossing and let the engine pass. But the plaintiff's husband drove straight on, the horses got across the track, but the roller was still on the north rail when the engine struck it.

An ingenious calculation is made by learned counsel to show that there was sufficient time after the horses had passed over the mill track and before the accident for the engineer to have stopped his engine if he had used the means at hand. But when a witness, who is a casual on-looker, comes to guess during the excitement of a shocking catastrophe at the rate of speed an engine was going and that is made the basis of a calculation to show what could have been accomplished in two seconds by the energetic use of all appliances, the calculation is not reliable. Besides, the argument based on that calculation assumes that the engineer, if he had been watchful, would have realized as soon as the team crossed the mill track that the driver was not going to stop. But the engineer can not be charged with such knowledge. Even though he saw the driver of the team approach dangerously near the crossing, yet he had a right to presume that the driver had used his eyes and would act as a reasonable man under the circumstances would for his own preservation. If the team had been approaching rapidly, there might have been in that fact some suggestion that the driver intended to try to cross in front of the engine. But approaching, as he was, at a very slow pace there was nothing to indicate that he would not or that he could not stop before going on the main track.

This case does not fall within the doctrine laid down in Kellny v. Railroad, 101 Mo. 67, and Morgan v. Railroad, 159 Mo. 262.

The court should have given the instruction asked by the defendant in the nature of a demurrer to the evidence.

The judgment is reversed. All concur.