## SLOCUM v. ERIE R. CO.

### No. 100.

Circuit Court of Appeals, Second Circuit.

Jan. 5, 1931.

Mortimer L. Sullivan, of Elmira, N. Y., for appellant.

Stanchfield, Collin, Lovell & Sayles, of Elmira, N. Y., for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff's intestate, Guy C. Slocum, was a switchman in a crew employed by the defendant, and was killed in its yard at Elmira, N. Y., on October 13, 1928, while assisting in putting five cars onto a siding by means of a "flying switch." The action was brought under the Federal Employers' Liability Act (45 USCA §§ 51–59). It was heard here on appeal from a judgment for the plaintiff [37 F.(2d) 42], and, after reversal and remand, a new trial ended in the direction of a verdict for the defendant. The above-mentioned case may be referred to for the circumstances surrounding the accident as the only material change in the evidence now is that a witness produced by the plaintiff testified that he saw Slocum fall from a car after it had been subjected to a violent jerk from the engine when it started. How and why Slocum fell to his death had been left without any satisfactory explanation at the first trial. The sole question now is whether this new evidence is adequate to supply the deficiency.

The new witness, Howe, after testifying that he was four tracks north of the five cars to be cut out and shunted onto the siding; that he first saw Slocum coming between the

cars; that he saw him mount a high gondola directly opposite witness; that Slocum grasped the brake rod with his left hand; and that then the train gave a sudden jolt—testified as follows:

"Q. Well, just describe that jolt a little more to us, the way the cars started? A. It was a very sudden jerk, and I saw Mr. Slocum swing on his left hand and fall between the cars.

"Q. How long did you work for the Erie Railroad Company, Mr. Howe, before this accident? A. About two years. * * *

"Q. And during that entire period had you ever seen one start as quickly and as suddenly as this particular train? A. No, I did not.

"Q. Now, during this period of time you were employed there, you had seen a large number of trains start? * * * A. I never saw a train—

"Q. Just a minute. Had you seen a large number of trains start? A. Yes, sir; and I have been crawling through trains and never have them start that violent. * * *

"Q. Well, tell us what you saw happen to Mr. Slocum's handhold when this car started? A. When it started, Mr. Slocum was swung around this way, and he had hold with his left hand. It threw him down between the high gondola and low gondola, and when I saw what was going to happen, I immediately started for V O tower for help, and when I got to V O tower, the tower man hollered out to me, 'There is a man hurt down east of here. Get your motor car and go down to the scene of the accident,' which I did.

"The Court: He was thrown downward?

"The Witness: Between the cars.

"Q. How long had the train, or rather, the five cars been standing there before you saw Slocum come between the cars? A. At least a minute.

"The Court: You mean these cars were stationary there?

"Mr. Ginsburg: Yes, your Honor.

"Q. Did you see Slocum at any time give any signal to start the five cars? A. I did not.

"Q. Was Slocum at any time that you were looking at the train, on the right side of the train? A. No."

The explanation this witness gave for being where he said he was when he said he saw what he testified to was not altogether satisfactory, perhaps, and his credibility was open to question, but his testimony was not directly contradicted, and, if believed, was sufficient to show that the negligence of the defendant in starting the train so suddenly as to throw Slocum off the car was the proximate cause of his death. Of course, we must consider this evidence in the light most favorable to the plaintiff, and if, when so viewed, a jury would be justified in finding the defendant negligent, the plaintiff was entitled to have the case submitted to the jury. Both the weight of the evidence and the credibility of the witness were for the jury, unless all the inferences which could be reasonably drawn from the evidence, taken as true, would still be less than enough to justify a plaintiff's verdict. Baltimore & Ohio R. Co. v. Groeger, 266 U. S. 521, 524, 45 S. Ct. 169, 69 L. Ed. 419; Western & A. R. Co. v. Hughes, 278 U. S. 496, 49 S. Ct. 231, 73 L. Ed. 473; Gardner v. Michigan Central R. Co., 150 U. S. 349, 361, 14 S. Ct. 140, 37 L. Ed. 1107; Jones v. East Tenn., etc., R. Co., 128 U. S. 443, 445, 9 S. Ct. 118, 32 L. Ed. 478.

In Gulf, etc., R. R. Co. v. Wells, 275 U. S. 455, 48 S. Ct. 151, 72 L. Ed. 370, the plaintiff was a brakeman who was hurt, as he claimed, by being thrown to the ground by a very sudden and unnecessary jerk of a moving train when he was trying to get on it. His testimony that the jerk was unusual and severe in comparison to what he had experienced at other times was held to have no substantial weight, since when his foot turned on a piece of coal and he fell he was not in a situation where he could judge with any accuracy. This witness here produced, however, was under no such handicap, and we think his testimony, in connection with the other evidence, made a case which should have been submitted to the jury.

Judgment reversed, and cause remanded.