CLARENCE ELKIN v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.—74 S. W. (2d) 600.

Division One, September 18, 1934.*

*NOTE: Opinion filed at May Term, 1934, July 17, 1934; motion for rehearing filed; motion overruled at September Term, September 18, 1934.

952

*T. E. Francis, B. G. Carpenter* and *Allen, Moser & Marsalek* for appellant.

*Everett Hullverson* and *Staunton E. Boudreau* for respondent.

FRANK, J.—Action to recover damages for alleged personal injuries. Judgment for plaintiff and defendant appealed.

The petition contained five assignments of negligence, four of which charged primary negligence, and the fifth charged negligence under the humanitarian doctrine. The case was submitted to the jury under the humanitarian doctrine alone, and a recovery for plaintiff was predicated upon a finding by the jury that defendant could have avoided the collision by stopping the street car, or by slackening the speed thereof, or by giving warning of its approach.

The pertinent facts will be stated in connection with the question discussed.

Appellant's first contention is that the court erred in refusing to give its peremptory instruction directing a verdict for defendant. Respondent counters by contending that appellant waived its right to question the sufficiency of the evidence to make a case under the humanitarian doctrine, by failing to stand on its demurrer to the evidence, and by joinder with plaintiff in submitting the case to the jury under that doctrine. Torrance v. Pryor, 210 S. W. 430, 432-3, is cited in support of the alleged waiver. In the Torrance case plaintiff alleged both primary and humanitarian negligence. A general demurrer to the evidence was tendered and overruled, and then both plaintiff and defendant requested and received instructions submitting the case to the jury under the humanitarian doctrine. We held in that case that defendant was estopped from contending on appeal that the evidence was not sufficient to make a case under the humanitarian doctrine.

We do not agree with either the reasoning or the conclusions reached in the Torrance case on the question of waiver. Our understanding is that a general demurrer to the evidence challenges the sufficiency of the evidence to make a case for the jury under any theory of liability alleged in the petition. Indeed, the Torrance case so holds. On that subject, the opinion in that case says:

"Here the demurrer challenged the whole case, and the evidence upon all of the several alleged grounds of negligence."

It is settled law that where a defendant, by general demurrer, questions the sufficiency of the evidence to make a case for the jury, and that demurrer is overruled, the defendant does not waive the right to challenge the adverse ruling on the demurrer by thereafter requesting and receiving instructions the converse of those given for plaintiff. This is so because such a submission on the part of defendant is not voluntary but is forced by the adverse ruling on the demurrer to the evidence. [Williams v. St. Louis Public Service Co., 335 Mo. 335, 73 S. W. (2d) 199; Kenefick-Hammond Co. v. Fire Insurance Society, 205 Mo. 294, 103 S. W. 957.] The rule is the same whether the petition alleges one or many grounds of recovery.

The Torrance case holds that a different rule applies in a case where the petition alleges more than one ground of recovery. In that case the petition counted on both primary and humanitarian negligence. A general demurrer to the evidence was overruled. Plaintiff submitted the case to the jury under both theories of negligence. Defendant requested and was given an instruction on the humanitarian doctrine, the converse of that given for plaintiff. On appeal defendant insisted that no case was made under the humanitarian doctrine. The opinion holds that since the demurrer to the evidence in the court below was not a specific one, and did not specifically challenge the sufficiency of the evidence under that particular theory of the case, defendant's act in submitting that theory of the case by instructions estopped it from asserting that such theory was not in the case. Of course, if the defendant in that case had submitted the case to the jury under the humanitarian doctrine without first challenging the sufficiency of the evidence to make a case under that doctrine, it would then have been estopped to assert on appeal that no such doctrine was in the case, but it did not do that. Its general demurrer to the evidence challenged the whole case, and necessarily, therefore, challenged the sufficiency of the evidence on each branch of the case. ■ Our judgment is that the defendant in that case was not estopped from asserting the insufficiency of the evidence to make a case under the humanitarian doctrine, and that the court erred in so holding. To the extent of that holding, that case and subsequent cases following it on that point, should be and are hereby overruled. If the Torrance case correctly declared the law, we would still deny the contention that appellant is estopped to question the sufficiency of the evidence in the instant case, because it brought itself squarely within the rule announced in the Torrance case by requesting five separate withdrawal instructions whereby it sought to withdraw from the consideration of the jury every assignment of negligence contained in plaintiff's petition.

This brings us to a consideration of the case on its merits.

Appellant contends that the court erred in refusing to give its peremptory instruction in the nature of a demurrer to the evidence.

Plaintiff's Instruction No. 1 submitted the case to the jury under the humanitarian doctrine alone, and predicated a verdict for plaintiff upon a finding by the jury that the motorman could have avoided the collision by stopping the street car, or by slackening the speed thereof, or by sounding a warning of its dangerous proximity.

We will first take the question of the motorman's ability to avoid the collision by stopping the street car with the means and appliances at hand and with reasonable safety to said car and the persons thereon after he saw or by the exercise of ordinary care could have seen plaintiff in or about to go into a position of imminent peril.

956

The following facts appear from plaintiff's own testimony.

The collision in question occurred at the intersection of University Street and Jefferson Avenue in the city of St. Louis. University Street runs east and west and Jefferson Avenue north and south. Plaintiff was driving a large truck eastward on University Street at a speed of four or five miles per hour intending to cross the street car tracks on Jefferson Avenue and continue westward on University Street. A large hotel building stood at the southwest corner of the intersection extending up to the building line. As plaintiff drove eastward on University Street he could not see the street car approaching from the south on Jefferson Avenue until he had passed the hotel building, which point was twenty-one feet from the street car tracks. Upon reaching this point, plaintiff looked to the south and saw the street car 200 or 250 feet distant, approaching the intersection at about ten or twelve miles per hour. He saw two men standing near the curb and thought they were waiting to board the street car. He continued to drive his truck westward toward the street car tracks at a speed of four or five miles per hour without again looking for the approach of the street car, until the front wheels of his truck were in the middle of the northbound car track, when he then looked and saw the street car about forty or forty-five feet from him traveling at a speed of twenty-five or thirty miles per hour. He then stepped on the gas in an effort to get across the track, but the street car struck the truck four or five feet back of the driver's seat. He testified that at any of the times in question he could have stopped his truck within a distance of two feet.

William Roeder, a witness for plaintiff testified that he saw the street car when it was about one hundred feet south of the intersection, and at that time it was traveling twenty or twenty-five miles per hour.

Mary Masala, a passenger on the street car, testifying for plaintiff, said that when the truck reached the street car track, the street car was then about sixty feet distant from the truck; that the motorman on the street car did not do anything at that time; that she noticed that he stepped to his wheel, then suddenly left it and ran back through the car; that the street car was then not quite one-half block away from the truck; that the street car did not slacken its speed before the collision; that the bell on the street car was not sounded at any time.

Under the humanitarian doctrine the duty of the motorman to stop the street car or slacken the speed thereof would not arise unless he saw or by the exercise of ordinary care could have seen plaintiff about to enter a position of imminent peril. A person is in imminent peril when he is in or about to enter the danger zone. The limits of the danger zone must be determined by the facts of

each particular case. In the instant case plaintiff was driving the truck toward the street car track at four or five miles per hour. He testified that he could have stopped the truck at any time within a distance of two feet. He also said if he had looked when his truck was within five feet of the track, he could have stopped it and thereby prevented the collision. Considering the slow rate of speed at which the truck was traveling, and the short distance in which it could have been stopped, and assuming that the motorman saw and observed plaintiff at all times after he passed the hotel building where he could be seen, there being nothing in the conduct of plaintiff, or any fact or circumstance in the case to indicate to the motorman on the street car that plaintiff was oblivious of his danger, and that he intended to drive his truck upon the track in front of the approaching street car, the motorman had a right to assume that he would stop the truck before entering the danger zone, which, under the facts shown, was within a few feet of the track. The rule governing such a state of facts is clearly stated in Guyer v. Railroad, 174 Mo. 344, 351, 73 S. W. 584. It is there said:

"Besides, the argument based on that calculation assumes that the engineer, if he had been watchful, would have realized as soon as the team crossed the mill track that the driver was not going to stop. But the engineer cannot be charged with such knowledge. Even though he saw the driver of the team approach dangerously near the crossing, yet he had a right to presume that the driver had used his eyes and would act as a reasonable man under the circumstances would for his own preservation. If the team had been approaching rapidly, there might have been in that fact some suggestion that the driver intended to try to cross in front of the engine. But approaching, as he was, at a very slow pace there was nothing to indicate that he would not or that he could not stop before going on the main track." [See, also, Beal v. Railway Co., 256 S. W. 733; State ex rel. Frisco Ry. Co. v. Reynolds, 289 Mo. 489, 491, 233 S. W. 219; Lackey v. United Rys. Co., 288 Mo. 120, 143, 231 S. W. 956; Markowitz v. Met. St. Ry. Co., 186 Mo. 350, 85 S. W. 351; Schmidt v. Railroad, 191 Mo. 215, 233, 90 S. W. 136.]

There is no direct evidence in the record as to where the street car was or the rate of speed at which it was traveling at the time plaintiff was about to enter the danger zone. Plaintiff did testify that he looked for the car at the first opportunity after passing the hotel building, and at that time it was 200 or 250 feet distant from the crossing, traveling ten or twelve miles per hour. He also testified that when he drove upon the track, he again looked and saw the street car forty or forty-five feet from the crossing, traveling twenty-five or thirty miles per hour. A witness for plaintiff testified that he saw the car when it was one hundred feet from the cross-

ing, and at that time it was traveling twenty or twenty-five miles per hour. Conceding that it might be possible to figure from the evidence of plaintiff and his witness just where the car was, and the rate of speed at which it was traveling at the time plaintiff's truck was about to enter the danger zone, still no case was made for the jury under the charge that the motorman could have avoided the collision by stopping the car after he saw or should have seen that plaintiff was about to enter the danger zone, because there is no evidence in the record showing the distance in which the car could have been stopped if traveling at the rate of speed at which plaintiff and his witness testified it was traveling. It is true the motorman testified that the speed of the street car at no time exceeded ten miles per hour, and, going at that rate, it could have been stopped within a distance of forty feet. It was also shown that in a deposition taken before the trial the motorman testified that going at ten miles per hour the street car could have been stopped within twenty feet. He explained the discrepancy between the evidence contained in his deposition and that given at the trial. It is, however, immaterial whether the street car going at ten miles per hour could have been stopped within twenty feet or within forty feet, because plaintiff is not entitled to the benefit of such testimony. [4] Plaintiff is entitled to the benefit of any evidence offered by defendant which tends to support his theory of the case, and is consistent with his own testimony, but he cannot claim the benefit of any of defendant's evidence which contradicts his own testimony and is at war with his own theory of the case. Plaintiff tried his case on the theory that the speed of the street car was twenty-five or thirty miles per hour. He so testified, but he failed to offer any evidence as to the distance in which the car could have been stopped going at twenty-five or thirty miles per hour, and for that reason he failed to make a case under the charge that the collision could have been avoided by stopping the car after the peril arose. Having thus failed to make a case, he will not be permitted to disregard his own evidence as to the rate of speed the car was traveling, as being untrue, and recover on the theory that the car was traveling at ten miles per hour, and at that rate of speed it could have been stopped within twenty or forty feet. [State ex rel. Weddle v. Trimble, 331 Mo. 1, 52 S. W. (2d) 864, 867-8; Graefe v. Transit Co., 244 Mo. 232, 264-5, 123 S. W. 835; Behen v. Transit Co., 186 Mo. 430, 440-1, 85 S. W. 346; Murry v. Transit Co., 176 Mo. 183, 189, 191, 75 S. W. 611; McCoy v. Home Oil & Gas Co., 60 S. W. (2d) 715, 724; Long v. Binnicker, 63 S. W. (2d) 831.]

The next contention is whether or not there was any substantial evidence tending to show that the collision could have been

avoided by slackening the speed of the street car or by giving timely warning of its approach.

On the question of warning, appellant contends that plaintiff was not entitled to a warning because he knew the street car was approaching the crossing. Respondent contends otherwise. We need not determine these contentions because there is no substantial evidence in the record tending to show that the collision could have been averted by the giving of a warning signal after the peril arose.

Under the facts shown the motorman had a right to assume that plaintiff would stop the truck before driving upon the track. This being true the motorman was under no duty to slacken the speed of the car or sound a warning of its approach until it was or should have been apparent to him that plaintiff did not intend to stop before going upon the track. Plaintiff testified that the truck was traveling four or five miles per hour and he could have stopped it at any time within a distance of two feet. If the truck could have been stopped within a space of two feet, and if the motorman had a right to presume that plaintiff would stop it before driving upon the track, undoubtedly it could not have been apparent to the motorman that plaintiff did not intend to stop until the truck was so near the track that no juror could say, without entering the field of guess and speculation, that the motorman could have avoided the collision by checking the speed of the street car or by sounding a warning after he saw or should have seen that plaintiff did not intend to stop and let the street car pass.

For the reasons stated, no case was made for the jury under the humanitarian doctrine. The judgment is therefore reversed and cause remanded. All concur.