JOHN G. PASHEA v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.—No. 38127.—165 S. W. (2d) 691.

Division One, September 8, 1942.

Rehearing Denied and Motion to Transfer to Banc Overruled, November 10, 1942.

*Carleton S. Hadley, Walter N. Davis* and *Arnot L. Sheppard* for appellant.

*Cox, Blair & Kooreman* for respondent.

HYDE, C.—This is an action under the Federal Employers' Liability Act (U. S. C. A., Title 45, Secs. 51-59) for damages for personal injuries. The applicability of the Federal Act was con-

ceded. Plaintiff had verdict and judgment for $18,000.00, from which defendant appealed.

The sole issue raised is whether the court should have directed a verdict for defendant. Plaintiff, a brakeman, was injured by a fall from the top of a freight car. The negligence alleged and submitted was that "said train was caused to stop with unusual and extraordinary suddenness and jerk." Defendant contends that plaintiff's evidence was insufficient to prove such a violent sudden stop and that his testimony concerning its result is in conflict with physical law.

Plaintiff was the "rear man" stationed on the end car (there was no caboose) of a 63-car freight train, going south toward East St. Louis. He estimated that, when he fell, the train was running at from eight to ten miles per hour. It was after 10 P. M. on a rainy, foggy March night, "spitting snow and sleet," temperature at 34. The footing on the runway on top of this rear freight car, made of three boards running lengthwise, was wet and slippery because of rain, melting sleet and snow. There was another train running behind plaintiff's train, and it was his duty to protect the rear end of his train by signals to prevent the following train from running into it. Plaintiff's train made three usual stops at crossings going into East St. Louis, and he said he was injured when a fourth unexpected stop was made soon after the train had started from the third regular stop. (Defendant's evidence denied that any such subsequent stop occurred.) Plaintiff, according to his testimony, was standing on the runway on top of the rear box car about eight feet from the end of the car, facing northwest. The train had been traveling east (or southeast) from the last stop but at this point the engine and the front part of the train was on a curve to the south. (In much of the testimony it is said that the train was going south, and that plaintiff fell off the north end.)

Plaintiff's version of what happened was as follows:

"The train was stopped all of a sudden with a terrific stop, or unusual stop, and it was from straight air. . . . It stopped unusual, and buckled and twisted in every shape. . . . Q. Just what the effect on you was when that stop occurred. What did it do to you? A. Well, a man generally braces, as well as he can brace himself, and it swung me one way. . . . Q. Was that towards the front or rear? A. Towards the front, because you are braced that way, and then the sudden jerk of the train, the sudden stop, it knocked me off the the rear end. Q. And, with reference to any motion, was there any other motion of the car beside front and back? A. It jerked and swung around, and wrastled around."

Plaintiff also demonstrated before the jury to show how he was braced and how the forces applied in the stop operated. Plaintiff said that in his railroad experience of more than thirty years he had seen few such violent stops, "not over six or seven of them"; that he had

been "knocked down on top several times," but was never before "knocked off." Plaintiff was seen to fall by a man approaching the track in an automobile, who was defendant's witness. He said: "There was a lot of cars just over the crossing, and I could see a man standing on top of one of them, with a lantern, and just as I made the turn to cross the crossing I saw this lantern fall. . . . It seemed to fall over the back end." He was not sure that the cars were moving at the time but said if so they were "moving awful slow." He went at once to plaintiff's assistance and was told by him "he had been knocked off the car." Plaintiff was lying with his head toward the car about five feet from the wheels. It was defendant's theory that plaintiff (who was blind in one eye) missed his step in attempting to climb down the rear ladder. (Defendant's claim seems to be that plaintiff was injured at the third regular stop where there was a switching movement made.)

Defendant's contention as to impossibility of plaintiff's testimony is that it is in violation of "the law of inertia: that a mass once set in motion will continue in the same direction and at the same momentum unless acted upon by some other physical law." Defendant argues thus: "If, therefore, respondent was standing still on the top of the box car (as he says he was), not touching anything except standing on the runway on the car (as he says he was), and if that car was moving south (as he says it was), then it is implicit in the acceptance of that law that he would continue to move south except for the counteracting intervention of some other physical law. . . . Therefore, it is certain that, while standing on top of the box car with nothing to lean against or hold to, respondent could do nothing which could possibly counteract, modify or affect in the slightest degree the law of inertia, and respondent could not by his own efforts prevent himself from being thrown south rather than north by the alleged sudden stop of the train."

However, plaintiff did also testify on cross-examination as follows: "Q. Well, I mean what first indicated to you that there was a stop? A. The first intimation I got, the jar, and then I was thrown off. That is the first indication that I got. Q. Did you hear any noise before the jar came? A. *Yes, there was some noise.* Q. Well, you know the kind— A. That was because I was braced towards the engine. . . . It knocked me off sideways. Q. It knocked you off sideways? A. Yes, sir. Right off the back of the train, but I was knocked off sideways. . . . Q. You didn't fall over the side of the car? A. No, off of the end. I was knocked off of the end. . . . *It was a shake* and I was off the car."

Defendant relies on Dunn v. Alton R. Co., 340 Mo. 1037, 104 S. W. (2d) 311, and Daniels v. Kansas City Electric R. Co., 177 Mo. App. 280. In the Dunn case, the plaintiff's testimony was held to be in violation of physical law and impossible, where he was inside a pas-

senger train and claimed to have been thrown out of the cars by a sudden stop. However, he said that the application of the brakes threw him south when the train was going north (when such force would be to the north); then that the release of the brakes threw him north (when this force would be to the south); and then, while the train was on a curve to the east, that he was thrown out of the vestibule door to the west. This is very different from the situation here where plaintiff said that the first force of the stop did swing him toward the front of the train but did not cause him to fall forward because he was "braced that way." This likewise distinguishes the situation here from that in the Daniels case.

Defendant's argument here is based on the assumption that only one single force could have been applied to plaintiff. It is true that parts of plaintiff's cross-examination, other than that above quoted, would be susceptible of the construction for which defendant contends. However, when all of plaintiff's testimony is considered together most favorably to his claim (as it must be in ruling the sufficiency of his evidence to make a jury case) there is substantial evidence to show that the first force applied in the stop did operate in the direction defendant says the law of inertia would operate but that plaintiff was not thrown forward by it because he was braced against it. It does not seem unreasonable to believe that there would be some jerk back or rebound immediately thereafter from such a sudden stop. It is true that plaintiff said it happened quickly (indicating with a snap of his fingers) but only such a sudden stop would likely have caused him to lose his balance. Therefore, we think it would be reasonable for the jury to find that there was in operation more than a single force in one direction only; that there was a sudden jerk, shake, or rebound as well as a sudden slackening; that the forces applied in bringing the train to a sudden stop operated both forward and backward; and that plaintiff would not be thrown down forward when braced against a force operating in that direction but could, because of the violence of that force and slick condition of his footing, lose his balance so as to be thrown off the end of the car by subsequently acting forces from those movements which he described as "buckled," "twisted," "jerked," "swung around" and "wrastled around." Defendant also argues that it would require considerable time and distance for the slack between the cars to run out. However, this would undoubtedly depend somewhat on grade (which was not shown) and other factors such as speed and whether the engine was working steam or drifting. It does not seem impossible that it could be taken up quickly and plaintiff did say "there was some noise." Moreover, in such a sudden emergency the jury might reasonably consider that the time element seemed shorter to him than it was and that he "could not relate all the acrobatic movements performed." [Petty-john v. Interstate Heating & Plumbing Co. (Mo. Sup.), 161 S. W.

(2d) 248, l. c. 251.] Upon consideration of all that plaintiff said we do not think we would be justified in disregarding his testimony as in violation of physical law and impossible. We have often said that "so frequently do unlooked-for-results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other." [Parrent v. M. & O. R. R. Co., 334 Mo. 1202, 70 S. W. (2d) 1068; Gately v. St. L.-S. F. Ry. Co., 332 Mo. 1, 14, 56 S. W. (2d) 54; Murphy v. Fred Wolferman, Inc., 347 Mo. 634, 148 S. W. (2d) 481, 485.] We hold that this rule should be followed here.

Defendant, in its contention that there was not sufficient evidence to show a negligent sudden violent stop, relies upon Gulf, Mobile & Northern R. Co. v. Wells, 275 U. S. 455, 48 S. Ct. 151, 72 L. Ed. 370. However, in the Wells case, the plaintiff was not on the train but on the ground trying to get on the train and, because his foot turned on a piece of coal, the court said: "He could not compare with any accuracy the jerk which he then felt with those he had experienced when riding on freight trains." The court also said that "there was no evidence that the engineer knew or should have known that Wells was not on the train, but was attempting to get on it after it had started and was in a situation in which a jerk of the train would be dangerous to him." It, therefore, held there was no substantial evidence of the engineer's negligence. A case more like this one is Texas & Pacific R. Co. v. Behymer, 189 U. S. 468, 23 S. Ct. 622, 47 L. Ed. 905. There a brakeman was required to be on top of cars covered with ice. He claimed the engine moving the cars stopped suddenly so that "the cars ran forward to the extent of the slack and back again"; and that the jerk upset his balance, causing him to be thrown between the cars. The court said that "the jury might have drawn a different conclusion from his evidence, or have disbelieved it in essential points, but they also were at liberty to find, as they must be taken to have found, that the foregoing statement is true"; and that "when the particulars and known condition of the train makes a sudden bump obviously dangerous to those known to be on top of the cars, we are not prepared to say that a jury would not be warranted in finding that an easy stop is a duty." So here, the evidence is sufficient to show that the engineer knew or should have known that plaintiff was required to be on the rear car because of the following train and of course he knew what the weather conditions were. [Other cases in which the evidence was held sufficient to show a negligent stop or jerk are Southern R. Co. v. Smith (Ala.), 128 So. 228; Missouri Pac. R. Co. v. Remel (Ark.), 48 S. W. (2d) 548, cert. den. 287 U. S. 634, 53 S. Ct. 85, 77 L. Ed. 550; Kansas City So. R. Co. v. Leinen (Ark.), 223 S. W. 1, cert. den. 254 U. S. 648, 41

S. Ct. 62, 65 L. Ed. 456; McGraw v. Southern R. Co. (N. C.), 175 S. E. 286; C., R. I. & P. R. Co. v. Owens (Okla.), 186 Pac. 1092, cert. den. 253 U. S. 489, 40 S. Ct. 485, 64 L. Ed. 1027; Baker v. Grace (Texas), 213 S. W. 299, l. c. 305 (claim of missing step); Texas & N. O. R. Co. v. Cammack (Texas), 280 S. W. 864, cert. den. 273 U. S. 720, 47 S. Ct. 111, 71 L. Ed. 858; Ward v. Denver & R. G. W. R. Co. (Utah), 85 Pac. (2d) 837; Lehigh Valley R. Co. v. Normile (2d U. S. C. C. A.), 254 Fed. 680; Slocum v. Erie R. Co. (2d U. S. C. C. A.), 47 Fed. (2d) 216; Norfolk & W. R. Co. v. Fraley (6th U. S. C. C. A.), 69 Fed. (2d) 775.]

Defendant's evidence here showed that its engineer had no reason to make a violent sudden stop (and he denied that he did) because of any emergency after leaving the last regular crossing stop. It was shown (in the engineer's deposition) that he had been on this run only eleven days; that he was not in good health; that he had some kind of nervous condition; and that he was under the care of a physician at and prior to the time when plaintiff was injured. Plaintiff here related what he claimed occurred and according to his testimony, this caused him to be thrown off the end of the car. There is no dispute about the fact that he did fall from the rear car and it was for the jury to say whether it believed his testimony as to what occurred and its effect. There was some controversy at the trial and conflicting evidence as to whether the engineer used engine air (brakes applied only to the engine itself) to stop the train (see Missouri Pacific R. Co. ▮ v. Remel, supra), as suggested in plaintiff's evidence; or automatic air (brakes applied at the same time to all the cars in the train) as claimed by defendant. So far as appears, there could have been a negligent violent stop by either method, especially under the weather conditions shown and plaintiff's precarious position. However, the use of engine air was not the negligence charged and submitted, and defendant made no request for a more detailed charge or submission. Therefore, upon the authority of the Behmyer case, and the other cases above cited, we hold that plaintiff's testimony as to the violence and suddenness of the stop and jerk caused by the engineer in applying the brakes, under all the circumstances shown, and its effect, was sufficient to make a jury case on this issue. We also hold that the negligence charged and submitted was sufficient as specific negligence (in the absence of any attack on the pleadings); and that there is no issue of res ipsa loquitur in the case as defendant now suggests for the first time on appeal.

▮ Defendant also claims that the rule of the federal courts requires this court to hold that a verdict should have been directed for it because the evidence was so conclusive against plaintiff as to require the trial court to set aside the verdict, citing Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; Pa. R. Co. v. Chamber-

lain, 288 U. S. 333, 53 S. Ct. 391, 77 L. Ed. 819; Southern Ry. Co. v. Walters, 284 U. S. 190, 52 S. Ct. 58, 76 L. Ed. 239. We fully discussed this contention in Hardin v. Illinois Central R. Co., 334 Mo. 1169, 70 S. W. (2d) 1075 (certiorari denied, 293 U. S. 574, 55 S. Ct. 86, 79 L. Ed. 672) reviewing these cases and others from decisions of Chief Justice Marshall and Mr. Justice Story to date. We reached the conclusion that under our system of administration of justice the jury must have the sole responsibility of finding facts in law cases, so that when the case has been submitted to them upon substantial evidence, on correct instructions telling them what facts are essential to their verdict, it is not the function of an appellate court to disagree with their view as to what are the true facts. (As shown by their verdict.) Our system is based on the idea that the jury is a highly important democratic institution which enables citizens to participate directly in the administration of justice. The result should be, if citizens take this obligation seriously, that all the people will know that they, as well as lawyers and judges, have a part in making the law work to do justice, because they alone, as members of the jury, determine the facts to which the law is to be applied. Thus the administration of justice is, and in a true democracy we think it must be, made a part of the responsibility of every citizen. We are convinced that the authorities discussed in the Hardin case require continuation of the historic function of the jury on this basis.

The judgment is affirmed. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur except *Hays, J.,* absent.

ON MOTION FOR REHEARING AND MOTION TO TRANSFER TO BANC.

HYDE, C.—On motion for rehearing, defendant contends that we have "seized fragments of respondent's evidence which are clearly contradicted by his evidence as a whole, and held that the jury might be permitted to base its verdict upon these isolated fragments of his evidence"; and that we held "that the jury had a right to disregard the solemn testimony of respondent and base its verdict upon a wholly speculative theory (of a rebound of cars in the stop) not only unsupported by any evidence, but contradicted by respondent's own evidence." This contention really amounts to a reargument of defendant's claim that it was impossible for a sudden stop to cause plaintiff to fall off the rear end of the car.

We fully agree that plaintiff's testimony must be considered as a whole and that, if so viewed, it is so completely contradictory that one part destroys the other then it amounts to nothing, is not substantial evidence, and will not sustain a verdict. [Steele v. K. C.

Southern Ry. Co., 265 Mo. 97, 175 S. W. 177; Adelsberger v. Sheehy, 332 Mo. 954, 59 S. W. (2d) 644.] However, we do not think this is true of plaintiff's evidence in this case, and we have explained why we so ruled. We have also explained why we do not consider plaintiff's account of the occurrence, and its results, to be impossible. We think the jurors could understand what it means to brace oneself against the operation of the law of inertia (whether standing in a farm wagon, in a bus, or on top a freight car); also that the effect of a sudden stop might unbalance one so braced (especially on slippery footing) even if his bracing has prevented him from being thrown forward; and further, that when cars are coupled together the slack in the couplings can operate both ways when there is a sudden stop. Plaintiff's account was not as perfect a description as might have been made by a professor of English, but we think it was sufficient to show that there were forces operating both ways. (In fact it is almost impossible to believe there would not be a rebound, of cars coupled together, from such a stop.) Furthermore, we think that the interpretation of plaintiff's descriptive terms "shake," "jerked," "twisted," etc., were for the jury, in the light' of all facts and circumstances they believed to be true from the evidence; and that plaintiff's testimony taken as a whole provided a reasonable basis for their verdict. The motion for rehearing is overruled.

 On motion to transfer to Banc, defendant calls attention to the recent ruling of the United States Supreme Court in Gorman v. Washington University, 316 U. S. 98, 62 S. Ct. 962, 86 L. Ed. 895, and insists that such transfer is required. However, we have ruled in McAllister v. St. Louis Merchants' Bridge Term. R. Co., 324 Mo. 1005, 25 S. W. (2d) 791, that Section 4 of the Amendment of 1890 to Section 6 of our Constitution does not require transfer when "the alleged cause of action rests on the Federal Employers' Liability Act" (45 U. S. C. A., Secs. 51-59), because "neither the validity of the act nor 'authority exercised under the United States' is drawn in question." [See also Scheufler v. Manufacturing Lumbermen's Underwriters, No. 27663-64, 349 Mo. 855, 163 S. W. (2d) 749, decided May Term, 1942, for further interpretation of the Gorman case.] We adhere to our ruling in the McAllister case.

The motion to transfer to the Court en Banc is also overruled. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur except *Hays, J.,* absent.