**HAYES**

v.

**COCA-COLA BOTTLING CO. OF ST. LOUIS et al.**

No. 43861.

Supreme Court of Missouri.

Division No. 1.

June 14, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied July 12, 1954.

640

Walther, Hecker, Walther & Barnard, Harold F. Hecker, George W. Cloyd, St. Louis, for appellants.

Dan P. Reardon, Joseph G. Stewart, St. Louis, for respondent.

HYDE, Presiding Judge.

■ Action for damages for personal injuries, sustained in a collision between a streetcar and a truck. Plaintiff had verdict and judgment for $12,000 and defendant appealed. The case was submitted on humanitarian negligence only (failure to stop or swerve); and the principal question to be decided is whether plaintiff made a jury case on such negligence. We, therefore, consider the evidence from the view most favorable to plaintiff's contentions, hereinafter referring to the corporate defendant as defendant.

Plaintiff was operating the streetcar east on Wise Avenue in Richmond Heights about 8:00 A. M. on the day of the casualty. Plaintiff had stopped for passengers at Bellevue Avenue (a north and south street) about 600 feet west of the place of collision and was coasting downgrade east toward Yale Avenue, without using any power. He estimated his speed at from 12 to 14 miles per hour. Passengers, who were plaintiff's witnesses, estimated it at 10 miles per hour. Yale Avenue led south from Wise Avenue but did not continue on the other side of Wise Avenue to the north. Instead at the west side of Yale Avenue the streetcar tracks made a full 90-degree turn to the north onto a private right-of-way of the streetcar company. Wise Avenue was 40 feet wide west of Yale Avenue but was only 30 feet wide east of it. From the beginning of the curve of the streetcar tracks in Wise Avenue to the north curb of Wise Avenue (where the tracks entered the private right-of-way) was 45 feet.

Plaintiff said that, when he was about 20 feet from the beginning of the curve, he saw defendant's truck about 160 feet east of the track. He said he was applying the brakes and reduced his speed to about 6 miles per hour entering the curve and that, when the front of the car reached the middle of the street, the speed was 3 to 4 miles per hour. The passengers, who testified as plaintiff's witnesses, did not notice any reduction in speed from their estimates of 10 miles per hour. At this point (with the front of the car in the middle of the street)

plaintiff said he saw the truck about 60 feet east of the tracks, near the center of Wise Avenue but on the right (north) side of the street. Plaintiff said he thereafter watched the truck, "seen he was making no effort to stop", so "reversed the car, plugged it" to make an emergency stop. He said the truck "swerved toward-into the right of way to make a dip around, and when he got into the gap in front of me he swung back and pushed the front end of the car in." Plaintiff said the car was stopped when the truck collided with it, but also said: "It took place just about the same time; it was less than a second, anyhow; it was around a second when the collision occurred." The passengers who testified for plaintiff did not know whether the car had stopped when the collision occurred. Plaintiff said he was unable to estimate the speed of the truck but gave as his best judgment 25 to 30 miles per hour. He said that, at 3 miles per hour, he could stop the streetcar in about 9 feet. He said he was sounding the gong as the car came around the curve and sounded it several times. There were no skid marks made by defendant's truck and no marks indicating that it had been pushed to the north. In parts of his deposition, offered by plaintiff, defendant's driver said he was going 20 miles per hour and could stop in 30 feet. The streetcar was 50 feet long. Photographs in evidence (taken before the truck was moved) show that it was still on the turn (had not got completely on to the straight track) at the place of the collision, the car standing northeast to southwest on the curve. Each party introduced in evidence plats drawn to scale which were conceded to be correct.

Defendant's driver as a witness for defendant said, as he drove west on Wise Avenue, he first saw the streetcar at the top of the hill near Bellevue Avenue. He said he was going 15 miles per hour (traveling upgrade) and got up to 20 "not any more than that", driving "close to the curb there, a couple of feet from it"; that when he got to the utility poles, east of the turn in the tracks, (he said this was 18 feet east) he "suddenly realized" the streetcar was going to make the turn without slackening speed

so he put on his brakes as hard as he could; and that he realized he couldn't stop in time so he turned his wheels to the right, started to pull into the right-of-way north of Wise Avenue and was hit when he got about on the track. He thought the streetcar was going 20 miles per hour or more and said it did not slow down at all for the turn. Defendant had corroborating witnesses as to the speed of the truck and the streetcar. Defendant knew that streetcars made a left turn at that place. He said the truck was barely moving at the time of the impact, "maybe two or three miles an hour" and that the streetcar was then going about 20 miles per hour. He thought he swerved five or six feet to the north. He said he could have stopped the truck in about 45 feet, including reaction time, which he said he did not take into consideration when he stated in his deposition that he could stop in 30 feet.

■■■ Defendant contends that, since there was no obliviousness in this case, the zone of imminent peril was very narrow. It is true as defendant states, that such zone of peril for plaintiff (aware of the approach of the truck) extended no farther beyond the path of the truck than the distance in which he could safely stop short of its path; or (otherwise stated) the truck driver's duty commenced when the streetcar came so close to the path of the truck that it became apparent (at the speed and manner it was moving) that it would not stop before reaching it. Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694 and cases cited. Nevertheless, considering the evidence most favorable to plaintiff, we think this was an issue for the jury. We think so because we believe the jury could reasonably have found that, when the truck was 60 feet from the track and the front of the streetcar reached the middle of the street, it was apparent at the speed and manner the streetcar was moving (swinging around the 90° curve, 3 to 4 miles per hour, with its gong sounding) the streetcar would not stop before reaching the path of the truck, which was very near the center of the street, according to plaintiff's testimony. "It is the reasonable

appearances of the situation that imposes the duty to act." Ukman v. Hoover Motor Express Co., Mo.Sup., 269 S.W.2d 35. Defendant's own testimony showed ability to stop the truck in 45 feet, including reaction time, and it must also be considered that the truck was traveling uphill on a street only 30 feet wide at this place. Under all these circumstances, (including no sign of skid marks) it would not be unreasonable for the jury to believe that the truck driver (knowing the car was turning), instead of performing the duty imposed on him by the streetcar entering the zone of peril, tried to beat it through the intersection.

Defendant argues that the left (south) side of the truck was 8 feet south of the north curb (based on defendant's evidence that the truck was traveling 2 feet south of the curb and overlooking plaintiff's evidence that it was traveling near the middle of the street) and that plaintiff could stop the streetcar in 9 feet (which was not shown to include reaction time); from which factors defendant says it can be demonstrated that the truck was so close to the streetcar at the time a true situation of peril arose that the collision could not thereafter have been avoided. From these factors, defendant says the zone of peril of plaintiff commenced no more than 17 feet south of the north curb (9 feet stopping distance plus 8 feet for the distance of the left side of the truck from the north curb) and defendant using its computation as to the average speed of the streetcar (certainly not most favorable to plaintiff) around the curve (28 feet from the beginning of the curve to the point where defendant says the zone of peril began) reaches the conclusion that the truck would have only been 23 feet west of the track and could not have avoided the collision either by stopping or swerving. As to this, we think it is sufficient to say (for the reasons we have indicated) that this was not the only view the jury could take; but instead could have believed plaintiff's testimony that the truck was 60 feet away, traveling near the center of the street, when the front of the streetcar (rounding the curve) reached the middle of the street;

and that plaintiff's imminent peril began then. If this is true, defendant's driver, by prompt action, could have stopped the truck before reaching the streetcar or could have avoided it by swerving, since he said he did swerve 5 or 6 feet in the last 10 feet he traveled and which was the only time he attempted to swerve. It would certainly be a reasonable finding that he could have turned into Yale Avenue (a street more than 80 feet wide, where it connected with Wise Avenue, with two driveways and a parkway strip in the center) if he had begun to turn 60 feet away from the tracks.

Defendant also argues the physical facts as showing plaintiff's contentions to be impossible, relying especially upon Freed v. Mason, Mo.App., 137 S.W.2d 673. This argument is based on the condition and position of the truck and the streetcar after the collision, as shown by the testimony and the photographs. After careful consideration we have concluded that this contention cannot be sustained and that the factual situation in the Freed case was very different. "We have often said that 'so frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other.'" Pashea v. Terminal R. Ass'n, 350 Mo. 132, 165 S.W.2d 691, 694. Defendant also argues that plaintiff's testimony is so contradictory that it fails to be substantial evidence. This is based on the proposition that if the truck was 160 feet from the track when the streetcar was 20 feet from the curve and was 60 feet from the track when the front of the streetcar was in the middle of the street, then the truck (traveling 100 feet) only went twice as fast as the streetcar (traveling 50 feet); so that accepting the fact that the truck was going 20 miles per hour (which plaintiff did) then the streetcar went 10 miles per hour around the curve, which is in conflict with plaintiff's own testimony of a slower speed (although in harmony with the testimony

of the passengers.) Defendant says that according to plaintiff's testimony as to speed of the streetcar, its truck would have passed the point of collision before the streetcar reached it. (However, even as to that, it would make some difference whether the truck was traveling near the curb or near the center of the street.) Defendant says either plaintiff's testimony as to speed of the streetcar destroys his estimate as to the distance at which he first saw the truck or his estimate as to this distance destroys his evidence as to the speed of the streetcar. Defendant also says plaintiff cannot have the benefit of testimony of his other witnesses or of defendant's evidence which is in conflict with his own personal testimony, citing such cases as Rucker v. Alton R. Co., 343 Mo. 929, 123 S.W.2d 24 loc. cit. 26; Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47; Elkin v. St. Louis Pub. Service Co., 1934, 335 Mo. 951, 74 S.W.2d 600. However, plaintiff's speed and distance estimates were not exact; and our conclusion is, regardless of the absolute accuracy of plaintiff's estimate of the distance at which he first saw the truck or of the speed of the streetcar on the curve, that the jury could reasonably have believed plaintiff's estimate that the truck was 60 feet away when the front of the streetcar reached the middle of the street; and if this is accepted, plaintiff made a jury case regardless of the correctness of his other estimates. Also to be considered in this connection is the testimony of defendant's driver that he was going 15 miles per hour when he first saw the streetcar and gradually increased to 20. Defendant also argues that plaintiff's testimony as to the streetcar being stopped for a definite length of time before the truck came in contact with it showed that plaintiff's estimates as to speed and distances were impossible. However, defendant does not consider this evidence most favorably to plaintiff and our view is that so considered the jury could have found the stopping of the streetcar was simultaneous with the collision. The fact that there were no marks to show the truck was pushed north is some corroboration of

this. We hold that plaintiff made a jury case on the negligence submitted.

 Defendant also alleges error in Instruction No. 1, authorizing verdict for plaintiff. Defendant makes three assignments against this instruction. One is that plaintiff failed to produce any evidence to support either of the two assignments of negligence which were submitted in the disjunctive. (Stopping and swerving.) This is ruled by what we have hereinabove decided. Another assignment is that this instruction ignores the principal disputed factual issue in the case and defendant's evidence thereon. Defendant says this is whether the streetcar was standing still or moving when the collision occurred. The instruction required a finding as to each of the five essential elements of the humanitarian rule, designated in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482. If defendant wanted anything more submitted it should have offered an instruction concerning it. Hooper v. Conrad, Mo.Sup., 260 S.W.2d 496. Defendant's final contention as to this instruction is that it unduly extends the zone of peril. This is based on the following portion of the instruction: "* * * and if you further find that after starting to turn to the north Thomas Hayes came into and was in a position of imminent peril from the approach of the truck of the defendant." Defendant says this told the jury that the position of imminent peril arose at the place where the streetcar commenced to turn to the north, which it says was at the beginning of the curve 45 feet from the north curb and 30 feet from the middle of the street.

We considered a similar contention in Melenson v. Howell, 344 Mo. 1137, 130 S. W.2d 555, 559, in which an instruction contained the following language: "* * * and if you find that after she started turning east that she was in a position of imminent and inescapable peril from the approach of said LaSalle automobile * * *." The same contention, as made here, was therein ruled as follows: "The italicized portion of this instruction (which is criticized by defendant) does not authorize a finding of a position of imminent peril *while* plaintiff started turning east (as in the Smithers case), or *when* plaintiff started turning east, but only *after* plaintiff started turning east. This did not extend the zone of peril but, on the contrary, expressly limited it by requiring a finding of a position of imminent peril beginning *after* plaintiff started to turn. In effect, it told the jury that plaintiff was not in such position before or even when she started to turn." We think this is true here especially since the part of the curve where the car actually would turn to the north was very close to the path of the truck as fixed by plaintiff's evidence. Our view is that Instruction 1, considered as a whole, clearly meant, as stated therein, that the truck driver's duty began when "Thomas Hayes came into and was in a position of imminent peril from the approach of the truck of defendant, * * *, and that defendants saw, or by the exercise of the highest degree of care could have seen, plaintiff in the aforesaid position of imminent peril, * * * in time thereafter, in the exercise of the highest degree of care, with the means and appliances then at hand and with reasonable safety to defendant's said truck, defendant driver and its occupants and with reasonable safety to other persons, vehicles or property there or thereabout, to have stopped said truck, etc." It was properly left to the jury to determine where, after the streetcar started to turn to the north, the position of imminent peril arose. We hold that the assignments made against Instruction 1 are without merit.

The judgment is affirmed.

All concur.

## On Motion for Rehearing or to Transfer to Court en Banc

██ Defendant reargues physical facts as to the position and condition of the vehicles which we consider as not conclusive on liability but as matters to argue to the jury. Defendant further says our decision is based on a mere guess by plaintiff that its truck was 60 feet away when the streetcar reached the middle of the street. What

defendant overlooks is that it was for the jury to decide whether this testimony of plaintiff should be rejected as a mere guess or whether it should be accepted as sufficiently accurate and credible to authorize finding this as a fact. The jury was not bound to accept defendant's version of the facts. See Reimers v. Connet Lumber Co., Mo.Sup., 269 S.W.2d 161; Machens v. Machens, Mo.Sup., 263 S.W.2d 724, loc.cit. 734. Defendant's further contention that this so called "guess" conflicts with physical facts is based on its interpretation of plaintiff's testimony as to the speed and distance of the truck when plaintiff first saw it. Defendant says this distance is fixed by the position of the truck in relation to Yale Avenue (as it went north, to the east of its intersection with Wise Avenue where it came from the south) but defendant takes the distance from the west curb of this street whereas plaintiff said the truck was "on the east side of Yale." The accuracy of the estimates of speed and distance was for the jury to decide and they could take the view most favorable to plaintiff. They could do likewise as to whether they believed the truck was traveling near the curb or the middle of the street and whether the truck could have been turned to the left in a distance of 60 feet, other matters reargued by defendant. If the truck could have been stopped in less than 60 feet, surely it could have been turned to the left in that distance.

Defendant further says the opinion applies two conflicting rules of law to a single factual situation. It says the zone of peril of plaintiff (not oblivious) was correctly stated in considering defendant's right to a directed verdict but that in ruling on its contention (that the language of instruction No. 1 quoted in the opinion improperly extended the danger zone) we took a completely contradictory position in stating: "It was properly left to the jury to determine where, after the streetcar started to turn to the north, the position of imminent peril arose." Defendant apparently construes this as meaning that the jury could find the zone of peril commenced

at the beginning of the curve when the streetcar started to turn north. However, we think the opinion is clear that it could not have begun, and the instruction did not mean it began, at that point *when* the streetcar started to turn north. On the contrary, the instruction meant and the jury could properly find only that at some point closer to the place of collision, *after* the streetcar started turning north, plaintiff came into a position of imminent peril; namely, the point at which it should have become apparent that the streetcar would not stop before reaching the path of the truck. Of course, the exact point where this should have become apparent (to a driver exercising the highest degree of care) was for the jury to determine from the evidence it believed. In this connection, defendant says that our statement, that "it is the reasonable appearances of the situation that imposes the duty to act", means that in ruling on the instruction we have considered this matter of imminent peril as though plaintiff was oblivious. However, the rule of reasonable appearances of the situation imposing the duty to act applies to situations where one is not oblivious as well as where he is. Thus the reasonable appearance that a person seeing the approach of a vehicle, cannot stop short of its path would certainly impose a duty on the driver of the vehicle to act. (For example, a child on a sled, unable to stop, coasting closely toward the path of an automobile.) Defendant recognized this by offering instruction No. 2, given by the Court, which said: "there was no duty upon the operator of defendant's truck to stop his truck, swerve or turn his truck to the left, until it became apparent to him, or by the exercise of the highest degree of care should have become apparent to him, that the street car which the plaintiff was operating was being driven from a position of safety and into a position of imminent peril of collision with defendant's truck." Certainly this meant apparent from the reasonable appearances of the situation. We find no merit in defendant's reargument of its contention that instruction No. 1 should have required a finding as to whether or

not the streetcar was stopped before the collision.

Defendant's motion for rehearing or to transfer to the Court en Banc is overruled.

All concur.